49 P.3d 410

Melody and Timothy LANDIS,
Petitioners–Appellants,

v.

Andy and Diane DeLaROSA,
Respondents.

No. 26064.

Supreme Court of Idaho,
Twin Falls, November 2001 Term.

June 12, 2002.

406

Harrigfeld, Pica & Stoddard, Boise, for appellant. Derek A. Pica for appellant.

Alfred E. Barrus, Burley, for respondent.

SCHROEDER, Justice.

**ON THE BRIEFS**

Timothy and Melody Landis (the Landises) appeal the decision denying them appointment as testamentary guardians of Cindy Gonzales' (Gonzales) two children. The decision of the magistrate court, which was affirmed by the district court, is affirmed by this Court.

**I.**

**BACKGROUND AND PRIOR PROCEEDINGS**

Gonzales died on February 26, 1998. She had eight children. Two of the children (the

children) are the subjects of this proceeding. The identity of the fathers in this case is not known.

On January 10, 1998, Gonzales executed a will designating the Landises as guardians of the children in the event of her death. The Landises were Gonzales' foster siblings. Subsequently, Gonzales signed a will dated February 26, 1998, the date of her death, that provided that the children would be placed with Andy and Diane DeLaRosa (the DeLaRosas). The DeLaRosas are Gonzales' sister and brother-in-law. The parties agree that the February 26, 1998, will is legally deficient because of Gonzales' medical condition, and it was not admitted into probate.

Following Gonzales' funeral, the children went home with the DeLaRosas and became a part of their family. They enrolled in the Cassia County school system. In April of 1998 the DeLaRosas filed a petition for adoption in Cassia County. The Landises then filed an objection to the adoption and filed a petition for guardianship in Cassia County asking the court to name them the guardians of the children. On July 31, 1998, the Landises filed a petition for formal probate of the January 10,1998, will in Canyon County, requesting that the magistrate accept their acceptance of testamentary appointment dated July 30, 1998. The proceedings in Cassia County were continued until the conclusion of the Canyon County probate proceedings.

On November 18, 1998, the DeLaRosas filed a motion in Canyon County to determine whether the testamentary appointment was automatic or whether a guardianship hearing should be held. The magistrate court denied the Landises' request for automatic appointment and held that they had not fulfilled the required qualifications for appointment because they had not alleged that the fathers of the children were unknown or dead. Further, there was no notice given to any potential fathers, and there had been no attempt to terminate the unknown fathers' potential rights. The Landises filed a motion to reconsider, which was also denied by the magistrate court. The Landises appealed the decision denying their request to be appointed guardians of the

children to the district court. The district court affirmed the magistrate court's decision.

## II.

## STANDARD OF REVIEW

■ The standard of review when this Court is reviewing an order of the district court acting in its appellate capacity is set forth in *Nicholls v. Blaser,* 102 Idaho 559, 633 P.2d 1137 (1981). In *Nicholls,* the Court stated that:

We deem the appropriate standard of review at the Supreme Court level to be: The Supreme Court reviews the trial court (magistrate) record to determine whether there is substantial and competent evidence to support the magistrate's findings of fact and whether the magistrate's conclusions of law follow from those findings. If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure.

*Id.* at 561, 633 P.2d at 1139 (citations omitted).

■ "Our standard of review, when we are reviewing a district court decision, acting in its appellate capacity, is to review the record and the magistrate's decision independently of, but with due regard for, the district court's decision." *Walborn v. Walborn,* 120 Idaho 494, 498, 817 P.2d 160, 164 (1991) (citations omitted).

## III.

## THE PETITION FOR APPOINTMENT AS GUARDIAN WAS PROPERLY DENIED

■ The Landises maintain that under the Uniform Probate Code (UPC) Gonzales was the only person qualified as a parent, arguing that the UPC definition of a parent is limited to one who would take if the child died intestate. Consequently, the Landises assert that an unknown father who has not established paternity does not meet this definition.

Idaho Code § 15–1–201 states in relevant part:

15–1–201. **General definitions.**—Subject to additional definitions contained in the subsequent chapters which are applicable to specific chapters or parts, and unless the context otherwise requires, in this code:

[ . . . ]

(32) "Parent" includes any person entitled to take, or who would be entitled to take if the child died without a will, as a parent under this code by intestate succession from the child whose relationship is in question and excludes any person who is only a stepparent, foster parent, or grandparent.

I.C. § 15–1–201(32).

■ Any issue of statutory interpretation begins with the literal words of the statute. *State ex rel. Lisby v. Lisby,* 126 Idaho 776, 779, 890 P.2d 727, 730 (1995). Terms in a statute are given their common, everyday meanings when the legislature has not provided a definition in the statute. *Ada County Assessor v. Roman Catholic Diocese,* 123 Idaho 425, 428, 849 P.2d 98, 101 (1993). The Landises argue that an unknown father would not be entitled to "take" as described in the statute if the child died intestate.

Regardless, the language of I.C. § 15–1–201(32) is not exclusive in its definition of a parent. The definition states the word "parent" includes certain persons for purposes of inheritance, not that it excludes persons for purposes of parental rights. This Court has stated that " 'including' is generally employed as a term of enlargement. It may be used as a word of addition 'indicating something not included rather than of specification.' Sometimes it is used as the equivalent of 'also' and of 'and.' " *Heffner v. Ketchen,* 50 Idaho 435, 440–441, 296 P. 768, 770 (1931).

The Landises point to I.C. § 15–2–109 which limits the definition of "father" for purposes of intestate succession. In order to inherit by intestate succession, a father must establish paternity and treat that child as his and must not have refused to support the child. I.C. § 15–2–109. However, this case does not concern intestate succession. The

term "parent" in I.C. § 15–5–202, which addresses testamentary appointment of a guardian, includes the common definition of mother and father. I.C. § 15–5–202 refers to the death of "both" parents, contrary to the argument that there is only one parent.

The Landises also argue that the district court inappropriately placed the burden on them to demonstrate that both parents were dead or that the surviving parent had been adjudged incapacitated.

Idaho Code § 15–5–202 states that:

**Testamentary appointment of guardian of minor.**—The parent of a minor may appoint by will a guardian or [of] an unmarried minor. Subject to the right of the minor under section 15–5–203 of this Part, a testamentary appointment becomes effective upon filing the guardian's acceptance in the court in which the will is probated, if before acceptance, both parents are dead **or the surviving parent is adjudged incapacitated.** If both parents are dead, an effective appointment by the parent who died later has priority. This state recognizes a testamentary appointment effected by filing the guardian's acceptance under a will probated in another state which is the testator's domicile. Written notice of acceptance of the appointment must be given by the guardian to the minor and to the person having his care or to his nearest adult relation immediately upon acceptance of appointment.

(Emphasis added).

■ Thus, either parent must be dead or the surviving parent must be adjudged incapacitated before a testamentary appointment becomes effective upon the guardians' acceptance. The Landises have not demonstrated that the father of the children is dead or has been adjudged incapacitated. They have failed to establish the conditions of I.C. § 15–5–202.

■ The Landises also argue that because the father is unknown he is automatically incapacitated because he is unable to care for the children. However, the definition of "incapacitated person" which is found in I.C. § 15–5–101(a) provides that: "(a) 'Incapacitated person' means any person who is im-paired, except by minority, to the extent that he lacks sufficient understanding or capacity to make or communicate responsible decisions concerning his person. . . ."

"Incapacity" as defined in the probate code concerns a person's ability to care for himself or herself, rather than being unknown. The argument that a person is incapacitated simply by being unknown is not supported by the probate code. I.C. § 15–5–202 requires that a parent be "*adjudged* incapacitated" before acceptance of a testamentary appointment by another. There is no evidence that the children's father had been adjudged incapacitated before acceptance of the testamentary appointment by the Landises.

The children's father has not been shown to be either dead or adjudged incapacitated. The conditions for appointment of the Landises as testamentary guardians have not been met.

## IV.

## THERE WAS NO VIOLATION OF GONZALES' FUNDAMENTAL CONSTITUTIONAL RIGHT TO DECIDE WHO SHOULD CARE FOR HER CHILDREN UPON HER DEATH

■ The Landises argue that the right of a parent to select a guardian is a fundamental right protected by the Fourteenth Amendment to the Constitution and that this right cannot be interfered with unless the guardian is unfit. They rely upon *Troxel v. Granville,* 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000), which held that the "liberty interest" in a parent's "care, custody, and control of their children" is a fundamental right protected by the Fourteenth Amendment of the Constitution. They maintain that Gonzales' right to direct the custody of her children has been infringed and cite *Rotter v. Rotter,* 93 Idaho 462, 465, 463 P.2d 928, 931 (1970), which quotes from *Jackson v. Haney,* 166 Okla. 13, 25 P.2d 771 (1933):

This right of a parent while living to select the guardian for his child is a right of value, and, when it is properly exercised, it must be respected and no . . . court has the right to disregard this testamentary

appointment in the absence of allegations of proof that the guardian by the will is an unfit person to act as guardian. . . .

*Id.*

*Rotter* does not stand for the proposition that all testamentary guardianships are automatic. The *Rotter* court stated that "[w]e hold, therefore, that for a testamentary guardian to 'qualify' under I.C. § 15–1813, the appointment under the will must be approved and confirmed by the proper court." *Id.* Under *Rotter,* "qualification" generally meant fitness to be a guardian, but the appointment still was not always automatic.

Idaho Code § 15–5–202 is not unconstitutional. The statute allows a parent to appoint a testamentary guardian, but places procedural safeguards to protect the rights of a surviving parent, who would also have the right to control the care and upbringing of his or her children.

## V.

## THE DELAROSAS ARE NOT ENTITLED TO ATTORNEY FEES ON APPEAL

The DeLaRosas argue that the Landises' appeal is unreasonable and without foundation and, consequently, attorney fees are proper under I.C. § 12–121. However, the appeal is not unreasonable and not with-out foundation. The Landises have presented issues of law which this Court has not addressed before the definition of "parent" under I.C. § 15–1–201(32) and the interpretation of I.C. § 15–5–202. Further, they have addressed the legislative issue of whether the magistrate court wrongly concluded that they would have to attempt to terminate the unknown father's rights in order to qualify for appointment. While it has not been necessary to decide this issue in light of the Court's other conclusions, this was an arguable issue of possible consequence.

## VI.

## CONCLUSION

The decision of the magistrate court is affirmed. The DeLaRosas are awarded costs. No attorney fees are allowed.

Chief Justice TROUT, Justices WALTERS, KIDWELL and EISMANN concur.