# IN THE SUPREME COURT OF THE STATE OF IDAHO

## Docket No. 33048

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | |
| | ) | |
| Plaintiff-Counterdefendant-Respondent, | ) | |
| | ) | Boise, May 2007 Term |
| v. | ) | |
| | ) | 2007 Opinion No. 85 |
| RICK YZAGUIRRE, Chairman, Ada County | ) | |
| Board of County Commissioners, JUDY | ) | Filed: May 25, 2007 |
| PEAVEY-DERR, Member, Ada County | ) | |
| Board of Commissioners, FRED TILMAN, | ) | Stephen W. Kenyon, Clerk |
| Member, Ada County Board of County | ) | |
| Commissioners, | ) | |
| | ) | |
| Defendants-Counterclaimants-Appellants. | ) | |

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Honorable William H. Woodland, District Judge.

The decision of the district court is <u>affirmed in part, reversed in part and remanded</u>.

Patrick D. Furey, Boise, for appellants.

Honorable Lawrence G. Wasden, Attorney General, Boise, for respondent. Deputy Attorney General, Mitchell E. Toryanski argued.

Moore, Smith, Buxton & Turcke, Chtd., Boise, for Idaho Association of Counties, as *amicus curiae*. Susan E. Buxton argued.

_____

SCHROEDER, Chief Justice.

This appeal calls upon the Court to determine the scope of the "litigation exception" to the open meeting law under I.C. § 67-2345(1)(f). The statute has since been amended, addressing the issue in this case, thereby rendering this decision valueless as precedent on the litigation exception. The subsidiary issue of what constitutes "written minutes" could have been removed from the case by transcribing a recording at little cost compared to the public funds

being expended for this litigation. The third issue concerns the question of the intent that must be proved to establish a violation of the open meeting law.

## I.
## FACTUAL AND PROCEDURAL BACKGROUND

On June 15, 2005, Ada County Commissioners Rick Yzaguirre, Judy Peavey-Derr, and Fred Tilman met officially in open session as the Ada County Board of Commissioners. Upon commencement of the meeting the Board voted to go into executive session under the "litigation exception," I.C. § 67-2345(1)(f), to meet with Boise City Councilman Vern Bisterfeldt. The votes were not recorded in the handwritten notes of the meeting, but they were preserved in an audio recording that was not transcribed but is available to the public. The executive session was not recorded. The public was not permitted to attend the executive session.

In the executive session, the Commissioners and Councilman Bisterfeldt discussed relations between Boise City and Ada County which had become strained over the issue of a potential subdivision approval in the county and the impact of county development on the cost of city services. The meeting did not relate to pending litigation, but the Commissioners claim that the topics discussed were the subject of probable future litigation. No legal counsel was present at the meeting.

The State filed suit against the Commissioners, seeking a declaration that the executive session violated the open meeting law and requesting the imposition of civil penalties against each of the Commissioners individually. These penalties would be a fine of $150.00 against each Commissioner. The Commissioners answered and counterclaimed for a declaratory judgment as to the meaning of I.C. § 67-2345(1)(f). The district court granted the State's motion for judgment on the pleadings, holding that I.C. § 67-2345(1)(f) applies only when a governing body is meeting with its legal counsel, and that the audio recording failed to satisfy the requirement in I.C. § 67-2345(1) that the vote to enter executive session be "recorded in the minutes."

The Commissioners appeal. The Idaho Association of Counties is before the Court as *amicus curiae* on the issues of whether the litigation exception requires the presence of an attorney and whether there is a good faith exception to the civil penalty provision of I.C. § 67-2347(2).

## II.
## STANDARD OF REVIEW

A judgment on the pleadings is reviewed under the same standard as a ruling on summary judgment. *Trimble v. Engelking*, 130 Idaho 300, 302, 939 P.2d 1379, 1381 (1997). Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." I.R.C.P. 56(c). For purposes of a motion for judgment on the pleadings, the moving party admits all the allegations of the opposing party's pleadings and also admits the untruth of its own allegations to the extent they have been denied. *Sterling v. Bloom*, 111 Idaho 211, 212, 723 P.2d 755, 756 (1986) (superseded on other grounds by statute). This Court freely reviews the interpretation of a statute and its application to the facts. *VFP VC v. Dakota Co.*, 141 Idaho 326, 331, 109 P.3d 714, 719 (2005).

## III.
## THE ISSUES

This appeal presents three questions of law. The first is whether the "litigation exception" in former I.C. § 67-2345(1)(f) can apply where no legal counsel is present. The second is whether an audio recording of a vote to enter executive session satisfies the requirement in I.C. § 67-2345(1) that the votes be recorded in the minutes. A further issue arises as to whether a violation warrants the imposition of civil penalties against the Commissioners under I.C. § 67-2347(2).

### A. Litigation Exception

**1. Idaho Code § 67-2345(1)(f) does not require the presence of an attorney "where there is a general public awareness of probable litigation."**

Idaho's legislature has declared that "the formation of public policy is public business and shall not be conducted in secret." I.C. § 67-2340. Idaho's open meeting law provides that "all meetings of a governing body of a public agency shall be open to the public and all persons shall be permitted to attend any meeting except as otherwise provided by this act." I.C. § 67-2342(1). An exception is provided for "executive sessions," during which a governing body may exclude the public "for deliberation on certain matters." I.C. § 67-2341(3). Executive sessions are authorized for any of the purposes enumerated in I.C. § 67-2345(1), but "[n]o executive session may be held for the purpose of taking any final action or making any final decision." I.C. § 67-2345(3).

3

The present dispute concerns the scope of the "litigation exception" in former I.C. § 67-2345(1)(f), which provided that a governing body could hold an executive session "To consider and advise its legal representatives in pending litigation or where there is a general public awareness of probable litigation." I.C. § 67-2345(1)(f) (2006).[1] The district court held that I.C. §67-2345(1)(f) "can be exercised only when a governing body is meeting with its legal counsel to discuss pending litigation or probable litigation about which there is general public awareness." This is an issue of statutory interpretation.

The objective of statutory interpretation is to give effect to legislative intent. *Robison v. Bateman-Hall*, 139 Idaho 207, 210, 76 P.3d 951, 954 (2003). Because "the best guide to legislative intent is the words of the statute itself," the interpretation of a statute must begin with the literal words of the statute. *In re Permit No. 36-7200*, 121 Idaho 819, 824, 828 P.2d 848, 853 (1992); *accord McLean v. Maverik Country Stores, Inc.*, 142 Idaho 810, 813, 135 P.3d 756, 759 (2006). Where the statutory language is unambiguous, the Court does not construe it but simply follows the law as written. *McLean*, 142 Idaho at 813, 135 P.3d at 759. The plain meaning of a statute therefore will prevail unless clearly expressed legislative intent is contrary or unless plain meaning leads to absurd results. *Gillihan v. Gump*, 140 Idaho 264, 266, 92 P.3d 514, 516 (2004). In determining its ordinary meaning "effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant." *State v. Mercer*, 143 Idaho 108, 109, 138 P.3d 308, 309 (2006) (quoting *In re Winton Lumber Company*, 57 Idaho 131, 136, 63 P.2d 664, 666 (1936)).

If the language of the statute is capable of more than one reasonable construction it is ambiguous. *Carrier v. Lake Pend Oreille Sch. Dist. No. 84*, 142 Idaho 804, 807, 134 P.3d 655, 658 (2006). An ambiguous statute must be construed to mean what the legislature intended it to mean. *Id*. To ascertain legislative intent, the Court examines not only the literal words of the statute, but the reasonableness of the proposed interpretations, the policy behind the statute, and its legislative history. *Id*.

---

[1] While this appeal was pending, the legislature amended I.C. § 67-2345(1)(f) to read as follows:
    To communicate with legal counsel for the public agency to discuss the legal ramifications of and legal options for pending litigation, or controversies not yet being litigated but imminently likely to be litigated. The mere presence of legal counsel at an executive session does not satisfy this requirement.
S.B. 1085, 59th Leg., 1st Reg. Sess., 2007 Idaho Sess. Laws ch. 174 (enacted March 26, 2007). The amendment, which becomes effective July 1, 2007, does not affect the outcome of this case.

4

Both litigants and the amicus argue that the meaning of I.C. § 67-2345(1)(f) can be gleaned from a plain reading of its language. Each of the three parties proposes a different plain reading. The provision, again, reads as follows:

> An executive session may be held:
> ***
> To consider and advise its legal representatives in pending litigation or where there is a general public awareness of probable litigation.

I.C. § 67-2345(1)(f). The parties agree that "its legal representatives" refers to legal counsel for the governing body holding the meeting. The issue is whether a governing body may discuss probable litigation in executive session without simultaneously advising its legal representatives.

The Commissioners argue that the statute should be read, in essence, as follows:

> An executive session may be held to consider, and advise its legal representatives in, litigation that is (1) pending or (2) sufficiently probable as to arouse general public awareness.

According to the Commissioners, the word "and" does not require that a governing body must conduct both activities at once ("consider and advise"), but merely enumerates two separate purposes for which executive session is authorized in connection with litigation.

Amicus Idaho Association of Counties reads the statute somewhat differently:

> An executive session may be held (1) to consider pending litigation; (2) to advise its legal representatives in pending litigation; or (3) where there is a general public awareness of probable litigation.

According to the amicus, "to" and "where" each begin a separate clause. The first clause, which contains the "consider and advise" language, sets forth several *purposes* for which an executive session is authorized. The second clause, beginning with "where," identifies a *circumstance* in which it is allowed.

The State reads the statute thusly:

> An executive session may be held to consider and advise its legal representatives (1) in pending litigation or (2) where there is a general public awareness of probable litigation.

According to the State, the only permissible purpose for an executive session is "to consider and advise its legal representatives." The remaining language simply clarifies that the consideration and advice must concern pending or probable litigation.

Ambiguity is not established merely because the parties present differing interpretations to the court. *In re Permit No. 36-7200*, 121 Idaho at 823-24, 828 P.2d at 852-53. If the language

of the statute is reasonably susceptible of only one interpretation, the statute is unambiguous and there is no occasion to look beyond the text of the statute. *See Id*. at 822-24, 828 P.2d at 851-53; *Carrier*, 142 Idaho at 807, 134 P.3d at 658. The first step is to examine the literal words of the statute to determine whether they support the parties' differing interpretations.

A careful reading of the statute reveals that there is only one grammatically acceptable interpretation. Contrary to the State's assertion, the statute does not contemplate that a governing body would "consider its legal representatives." Plainly the statute allows a governing body to "consider pending litigation." Thus, a governing body may hold an executive session "to consider, and advise its legal representatives in, pending litigation." The State's interpretation would read "consider" to mean "consult." It strains the ordinary meaning of "consider." The result urged by the State cannot be reconciled with the text of the statute.

It follows that the second part of the statute, "where there is a general public awareness of probable litigation," constitutes a separate and independent circumstance under which executive sessions may be held. Under the State's interpretation, "in" and "where" are parallel; each subclause ("in pending litigation" and "where there is a general public awareness of probable litigation") specifies an alternative condition under which a governing body may "consider and advise its legal representatives." This interpretation, however, only works if "consider and advise its legal representatives" stands by itself, or in other words if "consider" refers to "its legal representatives." On the other hand, if "consider" refers to "pending litigation," then "where" does not follow grammatically from anything else in (1)(f), but must follow directly from "held." In other words, "to" and "where" each signify independent conditions under which "an executive session may be held." Thus,

> An executive session may be held: (1) to consider, and advise its legal representatives in, pending litigation; or (2) where there is a general public awareness of probable litigation.

This is the only interpretation that makes grammatical sense of the provision without requiring a governing body to "consider its legal representatives," whatever that might mean.

This is not an absurd result. Probable litigation by definition involves situations where litigation may or may not occur. The legislature chose to rely on a "general public awareness" requirement rather than an attorney presence requirement to perform the gatekeeping function in such cases. The State's concerns about a potential for abuse were properly addressed to the

6

legislature which has acted, rendering the precedential value of this case nominal, and the continued expense of public funds on this defunct legislation wasteful.

Under the plain language of the statute the presence of legal counsel is irrelevant because the Commissioners were deliberating upon probable, not pending, litigation. According to the pleadings, the matters discussed at the executive session were the subject of probable litigation, and there was a general public awareness of that probability. Although there is disagreement as to whether the executive session considered matters outside the permissible scope of such sessions, for purposes of a motion for judgment on the pleadings, the executive session was authorized under the "probable litigation" clause of I.C. § 67-2345(1)(f). It is not necessary to decide whether legal counsel must be present to deliberate upon pending litigation because no litigation was pending.

**2. Whether there was a general public awareness of probable litigation is not at issue in this appeal.**

Even if an attorney is not required, the State contends the statute was violated because some topics discussed in the executive session did not relate to litigation at all. Both parties submitted affidavits to the district court in support of their characterization of what was discussed at the meeting, but the district court properly did not address the issue in its decision. Whether the subject matter of the meeting qualified under I.C. § 67-2345(1)(f) is a disputed issue of fact that cannot be resolved in the motion for judgment on the pleadings.

**B. Minutes**

**1. The motion and votes to enter executive session were not recorded in the minutes as required by law.**

Under the open meeting law, an executive session not only must convene for an authorized purpose but also must comply with procedural requirements. The Commissioners voted unanimously by roll call vote to enter executive session. However, the State alleges that the executive session did not comply with the open meeting law because the minutes do not reflect who made the motion to go into executive session or who voted on the motion.

The decision to enter executive session must be approved by "a two-thirds (2/3) vote recorded in the minutes of the meeting by individual vote." I.C. § 67-2345(1). Moreover, I.C. § 67-2344(1) provides as follows:

> The governing body of a public agency shall provide for the taking of written minutes of all its meetings. Neither a full transcript nor a recording of the

meeting is required, except as otherwise provided by law. All minutes shall be available to the public within a reasonable time after the meeting, and shall include at least the following information:

> (a) All members of the governing body present;
>
> (b) All motions, resolutions, orders, or ordinances proposed and their disposition;
>
> (c) The results of all votes, and upon the request of a member, the vote of each member, by name.

The Commissioners concede that the votes are not recorded in the handwritten notes from the meeting and apparently concluded that litigating this issue was of more consequence than the expedient of transcribing the recording for a few dollars. They argue that the statutory requirements are satisfied because the information is preserved in an audio recording of the meeting. They argue that the purposes of the statute are better served by an audio recording than by handwritten notes because a summary necessarily omits information whereas a recording preserves a complete and accurate account of the proceedings. They also point to the Public Records Act, I.C. §§ 9-337 *et seq.*, which defines "writing" to include "every means of recording, including . . . sounds." I.C. § 9-337(15) (Supp. 2006). That definition is not part of the open meeting law.

Legislative definitions of terms included within a statute control and dictate the meaning of those terms as used in the statute. *White v. Mock*, 140 Idaho 882, 890, 104 P.3d 356, 364, (2004). Statutory definitions provided in one act do not apply "for all purposes and in all contexts but generally only establish what they mean where they appear in that same act." *Maguire v. Yanke*, 99 Idaho 829, 836, 590 P.2d 85, 92 (1978). Where the legislature has not provided a definition in the statute, terms in the statute are given their common, everyday meanings. *Landis v. DeLaRosa*, 137 Idaho 405, 407, 49 P.3d 410, 412 (2002).

The open meeting law does not explicitly define "written." It does, however, distinguish recording from taking minutes: "the taking of written minutes" is mandatory, whereas "neither a full transcript nor a recording of the meeting is required." I.C. § 67-2344(1). The common, ordinary meaning of the term "written" refers to words or symbols recorded in visual form. *See* Black's Law Dictionary 1641 (8th ed. 2004) (defining "writing" as "Any intentional recording of words in a visual form, whether in the form of handwriting, printing, typewriting, or any other tangible form). An audio recording is not a "written" record as that term is commonly understood.

8

Neither the Public Records Act nor the cases from other jurisdictions cited by the Commissioners are applicable. The interpretation urged by the Commissioners contradicts the statutory text: if "*every* means of recording" constitutes writing, as the Commissioners argue, then nothing is accomplished by specifying that minutes must be in written form, and the term "written" becomes superfluous.

The Commissioners' argument about the superiority of an audio recording over a written summary presupposes issues of policy. Recording meetings is a commendable practice, but as the district court noted, there are also advantages to having the information in written, summarized form. In any event, policy considerations are irrelevant to whether the Commissioners complied with the statute. The legislature clearly expressed its intent to require written minutes.

The executive session did not comply with the open meeting law. The handwritten notes in the record, which are the only written record of the meeting, do not reflect who voted to go into executive session as required by I.C. § 67-2345(1).

## C. Civil Penalty

### 1. The Commissioners may assert a good-faith defense to the imposition of civil penalties under I.C. § 67-2347(2).

There are two consequences where the open meeting law is violated. First, any action taken at a meeting that violates the open meeting law is null and void. I.C. § 67-2347(1). This provision does not apply in this case because no action or decision is being challenged.

The other remedy, added by amendment in 1992, provides for a civil penalty against any member of a governing body "who knowingly conducts or participates in a meeting which violates the provisions of this act." I.C. § 67-2347(2). The Commissioners argue that even if there was a violation, they are entitled to dismissal because they believed the meeting complied with the statute. The State contends that the Commissioners' beliefs are irrelevant because there is no good faith defense under the statute. According to the State, liability attaches upon a showing that (1) the Commissioners participated in the meeting, (2) they knew they were participating in the meeting, and (3) the meeting violated the open meeting law.

The mental state necessary to impose a civil penalty under the statute depends on the language of the statute. *State v. Fox*, 124 Idaho 924, 925-26, 866 P.2d 181, 182-83 (1993) (quoting *State v. Sterrett*, 35 Idaho 580, 583, 207 P. 1071, 1072 (1922)) ("[W]hether a criminal

9

intent is a necessary element of a statutory offense is a matter of construction, to be determined from the language of the statute in view of its manifest purpose and design . . . .").  In interpreting statutory language, all the words of the statute must be given effect if possible, and the statute must be construed as a whole. *In re Permit No. 36-7200*, 121 Idaho at 822-23, 828 P.2d at 851-52.

The legislature's inclusion of the word "knowingly" in the statute indicates that it intended to condition the availability of a civil penalty on the defendant's mental state.  The State's interpretation would make the Commissioners strictly liable for any violation of the open meeting law simply for having conducted or participated in the meeting.  If the legislature had intended this result, there would have been no need to reference a mental state because conducting and participating are intentional acts.  "Knowingly" implies something more than a voluntary act; under the State's interpretation it becomes surplusage.  In order to give meaning to every term, the statute must be interpreted to require knowledge that the meeting violated the open meeting law.

The State argues that a mistake of law is not a defense, relying on this Court's opinion in *State v. Fox*.  The defendant in *Fox* was convicted of possessing ephedrine, a controlled substance, without a prescription.  Fox claimed he lacked the necessary *mens rea* because he did not know ephedrine was a controlled substance.  The Court rejected his argument, holding that the relevant statute did not require an intent to commit a crime, but merely the intent to perform the prohibited act.  124 Idaho at 926, 866 P.2d at 183.  The question was whether he knowingly possessed ephedrine without a prescription, not whether he knew it was illegal to do so. *Id*.

This case is distinguishable from *Fox*.  The holding in *Fox* was based on the text of the applicable statute; its reasoning applies only in "the absence of specific language to the contrary." *Id*.  The statute in *Fox* did not set forth any mental state as an element of the offense, and thus only a general criminal intent was required. *Id*.  Idaho Code § 67-2347(2) specifies that the individual must act "knowingly."  By its plain language, the statute imposes a civil penalty only where the participant was aware that the meeting violated the open meeting law.

The Commissioners are not subject to civil penalties unless, when they held the executive session, they knew it was not in compliance with the open meeting law.  Knowledge of a violation may be inferred, but it is a prerequisite to liability under I.C. § 67-2347(2).  The Commissioners claim they honestly believed the executive session complied with the open

10

meeting law. Taking the Commissioners' allegations to be true, the State is not entitled to judgment as a matter of law. However, the mental state of the Commissioners or any individual Commissioner is a question of fact to be determined.

## IV.
## CONCLUSION

Idaho Code § 67-2345(1)(f) allows a governing body to meet in executive session "where there is a general public awareness of probable litigation." The statute does not require that an attorney be present at such meetings.

However, the executive session violated the open meeting law because the motion and votes to enter executive session were not recorded in the written minutes as required under I.C. §§ 67-2344(1)(b) and 67-2345(1).

Although there was a violation, the Commissioners are not subject to a civil penalty unless they were aware of the violation when they held the meeting. Because the Commissioners denied any knowledge of a violation, judgment on the pleadings is not proper. A factual determination of their state of mind remains.

The decision of the district court is reversed in part, affirmed in part, and remanded for further proceedings.

Justices TROUT, EISMANN and BURDICK **CONCUR**.

JONES, J., concurring in part and dissenting in part.

I concur in the Court's opinion, save the conclusion in Part III.A.1. that the litigation exception in the Open Meeting Law (Idaho Code §§ 67-2340, et seq.) does not require the presence of legal counsel. I dissent from that conclusion because the language employed in the litigation exception does not admit to just one plausible interpretation and when the exception is construed in the light of legislative history and public policy it is clear that it was intended to narrowly apply to attorney-client communications regarding ongoing or anticipated litigation.

The language at issue in I.C. § 67-2345(1)(f) (2006) seems fairly straightforward on an initial reading. It allows for an executive session of a governing body "[t]o consider and advise its legal representatives in pending litigation or where there is a general public awareness of probable litigation." The provision contemplates give and take between the governing body and its counsel regarding pending or threatened litigation. The language indicates the exception applies to a unitary process where the governing body receives legal advice on the litigation from its attorney and gives instructions on how to proceed. "Consider" and "advise" are not only

11

bound together by an "and," but also by consideration of how things work in an attorney-client relationship.

The district court appears to have read the litigation exception in this manner, determining as follows:

> In reading the statute as a whole, including all of the authorizing circumstances set forth in section 2345, it is clear that (1)(f) can be exercised only when a governing body is meeting with its legal counsel to discuss pending litigation or probable litigation about which there is general public awareness. That interpretation does not require presence of counsel at all meetings, nor does it require counsel to be at meetings whenever there are meetings at which conflicts are discussed. But, it does require counsel's presence when the governing body wants to go into executive session to discuss matters which traditionally would be privileged communications or would be considered work product. Contrary to Defendants argument, this requirement does not burden governing bodies in small communities or governing bodies that may not have regular access to counsel. It simply means that when they wish to invoke (1)(f) and go into executive session, they must do so only to discuss pending or future litigation with their legal representative. That exception is limited to when counsel is present (and could be present telephonically) but even then, the executive session is only to discuss pending or probable litigation about which there is a general public awareness. This interpretation is consistent with the purpose of the Idaho Open Meeting Law and apparent from the plain reading of that provision.

Thus, the district court found the litigation exception language to be unambiguous, to be designed to protect attorney-client communications, and to necessarily require the presence of legal counsel in order to be invoked. I agree with that reading.

However, I would certainly concede that the language employed in the litigation exception is somewhat awkward when subjected to word-by-word microscopic scrutiny. Where I would read "consider and advice" as acts to be performed in tandem with the presence of legal counsel, the Court reads them to be acts that can be performed separately – the consideration to be allowable with or without the presence of legal counsel so that only the advising of legal representatives requires their presence at an executive session. While I prefer the reading advanced by the attorney general and adopted by the district court, I would concede that the Court has put forth a plausible reading of the statute. Indeed, three different readings of the statutory language were presented to the Court by the parties and amicus. Although the amicus reading is somewhat questionable in my opinion, it appears that my reading and the reading of the Court are both plausible and reasonable. Thus, I would find the statutory language to be

ambiguous and employ the rules of statutory construction to determine the legislative intent. "If it is necessary for this Court to interpret a statute, the Court will attempt to ascertain legislative intent, and in construing a statute, may examine the language used, the reasonableness of the proposed interpretations, and the policy behind the statute." *Gillihan v. Gump*, 140 Idaho 264, 266, 92 P.3d 514, 516 (2004). In determining the meaning of a statute the "overall scheme and intent of the legislation must not be overlooked." *Idaho State Tax Comm'n v. Haener Bros., Inc.*, 121 Idaho 741, 744, 828 P.2d 304, 307 (1992).

We start with the proposition of openness in government. The framers of the Idaho Constitution wanted proceedings of the State Legislature to be conducted in public view. As one delegate put it, "I want the electric light of publicity turned upon every act that they do." II *Proceedings and Debates of the Constitutional Convention of Idaho 1889*, 1217 (I.W. Hart ed. 1912) (State of Del. A.F. Parker). There is no reason to believe that the constitutional framers would have expected less of county and city governments. Indeed, the Legislature has provided for openness, both with regard to meetings of governmental bodies and records of those bodies. Idaho Code § 9-338 presumes that all public records in Idaho are open for inspection by the public. This Court presumes that all public records are open to disclosure and that all exemptions are narrowly construed. *Federated Publications, Inc. v. Boise City*, 128 Idaho 459, 463, 915 P.2d 21, 25 (1996).

In Idaho Code § 67-2340, the Legislature "finds and declares that it is the policy of this state that the formation of public policy is public business and shall not be conducted in secret." The Legislature implemented this policy mandate through Idaho Code § 67-2342(1), which requires all meetings of a governing body of a public agency to be open, with certain specified exceptions for executive sessions. *Gardner v. Evans*, 110 Idaho 925, 929, 719 P.2d 1185, 1189 (1986). The exceptions for executive sessions should, like exceptions for the public records law, be narrowly construed. *See* Norman J. Singer, Sutherland Statutes and Statutory Construction, § 47:11 (6th Ed. 2002) ("where a general provision in a statute has certain limited exceptions, all doubts should be resolved in favor of the general provision rather than the exceptions").

With regard specifically to counties, the Legislature has provided in Title 31, the code title pertaining to counties and county law, that all meetings of a board of county commissioners "must be public." Idaho Code § 31-710(4). The Legislature provides for no exceptions in the county law. In 1985 the Court of Appeals found a clear and definite conflict between this

13

provision and the executive session provisions of I.C. § 67-2345, holding that the latter govern because it was the later-enacted. *Nelson v. Boundary County*, 109 Idaho 205, 208, 706 P.2d 94, 97 (Ct. App. 1985). This Court has not had occasion to rule on this particular issue and it is not necessary to do so at this time in light of the legislative history, which indicates that the litigation exception was not intended to apply in the circumstances of this case. What is important to draw from the county law is the strong public policy in favor of open public meetings of county commissions.

The Open Meeting Law was enacted in 1974 "to provide for more open meetings of governing bodies in Idaho" and to combat the attitude of many governing bodies "that the public's business is none of the public's business." H.B. 602, Statement of Purpose, 42nd Leg. 2nd Sess. (Idaho 1974). As enacted in 1974, the legislation did not contain a litigation exception. 1974 Idaho Sess. Laws, Ch. 187, p. 1492. In 1978, the Legislature enacted H.B. 582, which established the litigation exception in subsection (1)(f) to "allow governing bodies to go into executive session to consider and advise its legal representatives on pending litigation." H.B. 582, Statement of Purpose, 44th Leg., 2nd Sess. (Idaho 1978); 1978 Idaho Sess. Laws, Ch. 302, p. 759. The legislative history is instructive. Representative Ingram was the sponsor of the legislation, which was proposed by the Association of Idaho Cities. According to the record developed in the House State Affairs Committee when the legislation was first considered:

> Rep. Ingram spoke to the committee on this proposed legislation and said this amendment would allow governing bodies like city councils and county commissioners, etc., to go into executive session to consider and advise its legal representatives on pending litigation. He said the Association of Idaho Cities had asked that he bring this to committee since he was the author of the original meeting law. Mr. Marty Peterson from the Association of Idaho Cities spoke to the committee and said this amendment will allow city councils to meet with legal counsel in matters concerning litigation in an attorney-client relationship.

> \* \* \*

> Rep. Winchester felt we have a good opening meeting law already and the wordage in this bill would allow the public to be shut out of the meetings. He felt this was contrary to the open meeting law. Rep. Ingram said he had been a little concerned about the wordage himself, however, when a suit had been filed he felt it would be legitimate for a governing body to meet with their attorney. He asked Mr. Peterson if his association would object to a change. Mr. Peterson said they would prefer the bill go through in its present form. He said it was their

14

understanding that unless a suit had actually been filed and was proceeding through the court system, the open meeting law would not allow the retention of an attorney-client relationship.

*Hearing on RS 3438 [H.B. 582] before the House State Affairs Committee,* 44th Leg., 2nd Sess., pp. 2-3 (Idaho Feb. 21, 1978). Thus, the entity requesting the legislation and the legislative sponsor intended to allow governing bodies "to meet with legal counsel in matters concerning litigation in an attorney-client relationship." With no exception for confidential attorney-client communications in the 1974 enactment, the governing body and its attorney would have had to discuss litigation strategy in open session, thereby defeating the attorney-client privilege. The 1978 amendment was designed specifically to keep the attorney-client exchange confidential. It should not be more broadly construed.

Although this case has been somewhat mooted by the Legislature's 2007 amendment of I.C. § 67-2345(1)(f), it is worthwhile to make mention of the long-standing policy in Idaho of maintaining openness in government. That requires narrow construction of any exception to the openness rule, including openness at meetings of governing bodies. Thus, while I support the Court's opinion in all other respects, I dissent with regard to the conclusion in part III.A.1. and would affirm the district court's ruling on that issue.

15