**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 39866**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **2013 Opinion No. 36** |
| Plaintiff-Appellant, | ) |
| | ) **Filed: June 7, 2013** |
| v. | ) |
| | ) **Stephen W. Kenyon, Clerk** |
| PAUL CAREY HARTZELL, | ) |
| | ) |
| Defendant-Respondent. | ) |
| | ) |

Appeal from the District Court of the Second Judicial District, State of Idaho, Nez Perce County. Hon. Jeff M. Brudie, District Judge.

Order of the district court granting motion to reduce charge of stalking in first degree to stalking in second degree, <u>reversed</u>.

Hon. Lawrence G. Wasden, Attorney General; Kenneth K. Jorgensen, Deputy Attorney General, Boise, for appellant. Kenneth K. Jorgensen argued.

Sara B. Thomas, State Appellate Public Defender; Sally J. Cooley, Deputy Appellate Public Defender, Boise, for respondent. Sally J. Cooley argued.

_____

PERRY, Judge Pro Tem

The state of Idaho appeals from the district court's order granting Paul Carey Hartzell's motion to reduce a charge of stalking in the first degree to stalking in the second degree. For the reasons set forth below, we reverse.

**I.**

**FACTS AND PROCEDURE**

On October 10, 2011, a former drug counselor for Hartzell obtained an "Order for Protection" in the state of Washington (Washington order) that restrained Hartzell from contacting or attempting to contact the counselor and from engaging in other similar activities for a period of one year. The counselor, who lived in Washington but worked in Idaho, informed the Idaho State Police that Hartzell contacted her while she was in Idaho after the Washington order

1

was issued. The state charged Hartzell with first degree stalking. The state alleged that Hartzell repeatedly contacted or attempted to contact the counselor between October 11 and October 16 and that Hartzell's actions were committed "in violation of a civil protection order." At a preliminary hearing, the state presented testimony and other evidence demonstrating that Hartzell sent flowers to the counselor at her workplace on October 11 with a card stating, "Please be with me forever, I love you, Paul." The evidence also showed Hartzell sent the counselor a message on a social networking service on October 16 stating, in part: "please marry me. . . . Never before have I wanted children until I imagined how beautiful ours could be if you helped me bring them to be."

At a pretrial hearing, Hartzell argued that the charge of first degree stalking should be reduced to second degree stalking because the Washington order was not a protection order. Hartzell and the state stipulated that Hartzell and the counselor did not have a domestic relationship and that the Washington order was not issued to protect the counselor from domestic violence.[1] The state conceded that a protection order may only be issued in Idaho upon a finding of domestic violence. The district court determined that the Washington order was not a protection order under Idaho law and reduced the charge from first degree stalking, I.C. § 18-7905, to second degree stalking, I.C. § 18-7906. The state appeals.

---

[1] According to testimony presented at the preliminary hearing, the counselor had provided Hartzell with drug and alcohol counseling. In September 2011, the counselor and her supervisor decided to transfer Hartzell's counseling services to another organization after Hartzell sent the counselor two emails suggesting that he sought a romantic relationship with her. Hartzell became upset due to the transfer and called the counselor and others to protest. On September 22, Hartzell arrived, uninvited, at the counselor's home in Washington. The counselor informed him that such behavior was inappropriate and warned him that she would call the police if it continued. The following day, Hartzell approached the counselor as she left her place of employment during a lunch break, at which point she requested that Hartzell not follow her and again warned him that she would call the police. On September 25, Hartzell approached the counselor at her home as she was getting out of her car and fled when she called the police. The counselor obtained a temporary protection order from a Washington court on September 26, restraining Hartzell from contacting or attempting to contact her and from keeping her under surveillance or attempting to do so, effective until October 10. Despite the temporary order, Hartzell made attempts to arrange a meeting with the counselor on October 5 and 6.

## II.

### ANALYSIS

A charge of stalking may be elevated to stalking in the first degree based on one of the aggravating factors listed in Idaho Code section 18-7905. That section provides, in part:

> (1) A person commits the crime of stalking in the first degree if the person violates section 18-7906, Idaho Code,[2] and:
>> (a) The actions constituting the offense are in violation of a temporary restraining order, protection order, no contact order or injunction, or any combination thereof. . . .

The state asserts that the district court erred by reducing the charge of first degree stalking to second degree stalking because the Washington order may be deemed to be a protection order, a no-contact order, or an injunction. Hartzell acknowledges that the Washington order is entitled to full faith and credit for purposes of enforcement, but asserts that it is not a protection order under Idaho law and cannot be used for purposes of elevating a stalking charge.[3] *See, e.g.*, I.C. § 39-6306A (providing that full faith and credit will be given to foreign protection orders).

The interpretation of a statute is an issue of law over which this Court exercises free review. *State v. Reyes*, 139 Idaho 502, 505, 80 P.3d 1103, 1106 (Ct. App. 2003). Where the language of a statute is plain and unambiguous, this Court must give effect to the statute as written, without engaging in statutory construction. *State v. Burnight*, 132 Idaho 654, 659, 978 P.2d 214, 219 (1999); *State v. Escobar*, 134 Idaho 387, 389, 3 P.3d 65, 67 (Ct. App. 2000). When this Court must engage in statutory construction because an ambiguity exists, it has the duty to ascertain the legislative intent and give effect to that intent. *State v. Beard*, 135 Idaho

---

[2]    Idaho Code section 18-7906 states, in relevant part:
(1) A person commits the crime of stalking in the second degree if the person knowingly and maliciously:
>> (a) Engages in a course of conduct that seriously alarms, annoys or harasses the victim and is such as would cause a reasonable person substantial emotional distress; or
>> (b) Engages in a course of conduct such as would cause a reasonable person to be in fear of death or physical injury, or in fear of the death or physical injury of a family or household member.

[3]    Hartzell also makes cursory arguments under the Privileges and Immunities Clause and the Due Process Clause of the Fourteenth Amendment, but does not demonstrate how this case involves disparate treatment of in-state and out-of-state residents.

641, 646, 22 P.3d 116, 121 (Ct. App. 2001). To ascertain such intent, not only must the literal words of the statute be examined, but also the context of those words within the statute and the statutory scheme, the public policy behind the statute, and its legislative history. *Id. See also State v. Jones*, 151 Idaho 943, 946, 265 P.3d 1155, 1158 (Ct. App. 2011). It is incumbent upon a court to give effect to all the words and provisions of the statute so that none will be void, superfluous, or redundant. *Beard*, 135 Idaho at 646, 22 P.3d at 121. Constructions of an ambiguous statute that would lead to an absurd result are disfavored. *State v. Doe*, 140 Idaho 271, 275, 92 P.3d 521, 525 (2004).

Legislative definitions of terms included within a statute control and dictate the meaning of those terms as used in the statute. *State v. Yzaguirre*, 144 Idaho 471, 477, 163 P.3d 1183, 1189 (2007). However, statutory definitions provided in one act do not apply for all purposes and in all contexts but generally only establish what they mean where they appear in that same act. *Id.* Where the legislature has not provided a definition in the statute, terms in the statute are given their "common, everyday meanings."[4] *Id.*

The term "protection order" is not defined by section 18-7905 or anywhere else in Title 18 of the Idaho Code, and thus must be given its common, everyday meaning. The district court determined that the term should be narrowly construed as an order protecting a person from domestic violence pursuant to the Domestic Violence Crime Prevention Act (DVCPA) (Title 39, Chapter 63, Idaho Code) or a similar foreign statute.[5] Such a definition is problematic because

---

[4] This has also been described as giving the words their "plain, usual, and ordinary meaning." *State v. Hart*, 135 Idaho 827, 829, 25 P.3d 850, 852 (2001).

[5] Hartzell points out that there is no language in section 18-7905(1)(a) indicating that the term "protection order" includes orders in foreign jurisdictions issued to statutes that substantially conform with section 39-6303(8). However, nor is there any language indicating that the term "protection order" is limited to protection orders that are issued pursuant to section 39-6303(8). In every other instance that we are aware of, where the Idaho Code directs that substantially conforming or substantially similar foreign orders or statutes be considered, the statute first specifically sets forth the section or subsections of the Idaho Code with which the foreign statute must be compared. *See* I.C. §§ 18-918(3)(c) (domestic violence enhancement); 18-920(3) (no-contact order violation enhancement); 18-2411(5) (theft of detection shielding device enhancement); 18-2421 (unused merchandise ownership protection act violation enhancement); 18-8001(8)(c) (driving without privileges enhancement); 18-8004A(2) (driving under the influence enhancement); 18-8004C(2) (driving under the influence enhancement); 18-8005(4), (6) and (9) (driving under the influence enhancement); 49-1401 (reckless driving

section 18-7905(1)(a) does not cite to the DVCPA for the definition of the term "protection order" and there is no other indication that the definition from the DVCPA should apply.

Indeed, the absence of a citation to the DVCPA indicates that the definition from the DVCPA should not apply. The legislature cited specific sections of Idaho Code to define what past convictions may be used to elevate a charge of stalking to stalking in the first degree. I.C. §§ 18-7905(1)(e) (past conviction under section 18-7906); 18-7905(1)(f) (listing ten additional crimes under specific chapters or sections of Idaho Code). The legislature also cited specific sections of Idaho Code to define other relevant terms in section 18-7905 including "course of conduct" and "victim." I.C. § 18-7905(2). Because the legislature cited specific sections of Idaho Code to define certain terms in section 18-7905, but did not do so for the term "protection order," the absence of a citation suggests that the legislature did not intend to limit the term "protection order" to an order issued to a specific section of the Idaho Code. Furthermore, other statutes that require the existence of or violation of a protection order specifically cite to the DVCPA, also indicating that the legislature was capable of limiting the definition of "protection order" to orders issued pursuant to the DVCPA if that was its intent. *See* I.C. §§ 18-3302(1)(n), 18-5414; 19-603(6); 19-5702(2)(a); 19-5703; 31-3201A(1)(b)(ix); 32-1704(2)(f). *But see* I.C. §§ 32-11-209(a)(2) (requiring disclosure of knowledge of protective orders without reference to specific code section); 32-11-308(b)(3) (also requiring disclosure of knowledge of protective orders without reference to specific code section).

At oral argument, Hartzell called attention to I.C. § 18-7906(2)(b)(ii), noting that in defining "family or household member" under the statute for stalking in the second degree, the legislature cited to the DVCPA. Although Hartzell contends this demonstrates the legislature incorporated the DVCPA into the stalking statute, this interpretation is too broad. The fact that the legislature cited the DVCPA in defining "family or household member," but declined to cite to the DVCPA in defining "temporary restraining order, protection order, no-contact order, or injunction" indicates that the legislature did not intend to limit the definition of those terms to their meaning within the DVCPA. In further support of this interpretation, the crime of stalking does not require any type of specific relationship. Regarding enhancement of a stalking charge,

---

enhancement). *See also* I.C. §§ 18-8303(1) and (11) (sex offender registration); 32-11-303(a) (enforcement of foreign child custody determination).

all that is required is that the order providing a basis for the enhancement prohibited conduct which also formed a basis for the charge of stalking. It is of no effect whether the order is civil, criminal, or even from a foreign jurisdiction (assuming it is entitled to full faith and credit). In this case, the Washington order proscribed, among other conduct, attempts to contact the counselor. The conduct forming a basis for the stalking charge--repeated contact and attempts to contact between October 11 and October 16--was also conduct that was prohibited under the Washington order. Thus, the charge was properly enhanced to stalking in the first degree.[6]

### III.
### CONCLUSION

The district court erred by holding the Washington order could not elevate the charge of second degree stalking to first degree stalking. It was sufficient that the Washington order prohibited conduct which also formed a basis for the charge of stalking. Therefore, we reverse the district court's order reducing the charge of first degree stalking to second degree stalking.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**

---

[6] The state alternatively asserts that the district court erred by reducing the charge to second degree stalking because the Washington order may be deemed to be a no-contact order or an injunction, regardless of whether it is deemed a protection order. Having decided that the Washington order was sufficient to enhance the charge from stalking in the second degree to stalking in the first degree, we need not address this issue.