**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| NORTHWEST ASSOCIATION OF INDEPENDENT SCHOOLS; SUN VALLEY COMMUNITY SCHOOL, INC.; FOOTHILLS SCHOOL OF ARTS AND SCIENCES, INC., | No. 25-2491 D.C. No. 1:24-cv-00335-AKB |
| *Plaintiffs - Appellants*, | |
| and | |
| COMMUNITY LIBRARY ASSOCIATION, INC., COLLISTER UNITED METHODIST CHURCH, INC., MARY HOLLIS ZIMMER, MATTHEW PODOLSKY, JEREMY WALLACE, on behalf of his minor child, A.W., CHRISTINA LEIDECKER, on behalf of herself and her minor child, S.L., | AMENDED OPINION |
| *Plaintiffs*, | |
| v. | |
| RAUL LABRADOR, in his capacity as the Attorney General for the State of Idaho; JAN M. BENNETTS, in her capacity as Prosecuting Attorney | |

for Ada County, Idaho; MATTHEW
E. FREDBACK, Attorney, in his
capacity as Prosecuting Attorney for
Blaine County, Idaho,

*Defendants - Appellees*.

Appeal from the United States District Court
for the District of Idaho
Amanda K. Brailsford, District Judge, Presiding

Argued and Submitted November 3, 2025
Portland, Oregon

Filed January 29, 2026
Amended February 12, 2026

Before: MILAN D. SMITH, JR., JACQUELINE H.
NGUYEN, and HOLLY A. THOMAS, Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.

## SUMMARY[*]

### First Amendment

The panel reversed the district court's order denying
Plaintiffs' motion for a preliminary injunction seeking to

---

[*] This summary constitutes no part of the opinion of the court. It has
been prepared by court staff for the convenience of the reader.

prevent the enforcement of Idaho's Children's School and Library Protection Act (H.B. 710), which forbids schools and public libraries from making certain "harmful" content available to minors, and remanded.

Plaintiffs—an association of independent private schools and some of its members— appealed the district court's denial of their motion for a preliminary injunction on their First Amendment overbreadth theories.  Plaintiffs attacked several provisions of H.B. 710, maintaining that the statute exceeds the bounds of federal obscenity law pursuant to *Miller v. California*, 413 U.S. 15 (1973).

The *Miller* test unmistakably governs obscene content for adult audiences, and in *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461 (2025), the Supreme Court explained its effect on obscenity as to minors.

The panel held that Plaintiffs had shown a likelihood of success on the merits of their overbreadth theory related to H.B. 710's context clause, which requires courts and other reviewers of allegedly offending content to consider whether the work "possesses serious literary, artistic, political or scientific value for minors" "in context in which it is used."  Idaho Code § 18-1514(6)(b)(ii).  H.B. 710's context clause is overbroad on its face, threatens to regulate a substantial amount of expressive activity, and is not readily susceptible to a limiting construction.

The panel held that Plaintiffs demonstrated irreparable harm, and the remaining preliminary injunction factors—the public interest and the balance of hardships—also favored Plaintiffs.

Because the panel's reversal was limited to H.B. 710's context clause, the panel remanded for the district court to

consider in the first instance the appropriate scope of a narrow preliminary injunction in this case.

## COUNSEL

Kevin M. Trowel (argued), Zack Goldberg, Martha Reiser, and Carey R. Dunne, Free & Fair Litigation Group, New York, New York; Wendy J. Olson and Nicole C. Hancock, Stoel Rives LLP, Boise, Idaho; Hayley Steele, Ballard Spahr LLP, Minneapolis, Minnesota; David L. Axelrod and Lesley F. Wolf, Ballard Spahr LLP, Philadelphia, Pennsylvania; Latonia H. Keith, McKay Cunningham, Boise, Idaho; for Plaintiffs-Appellants.

Alan M. Hurst (argued), Solicitor General; Aaron M. Green, Deputy Attorney General; James E. M. Craig, Deputy Division Chief; Michael A. Zarian, Deputy Solicitor General; Raul R. Labrador, Idaho Attorney General; Idaho Office of the Attorney General, Boise, Idaho; Dayton P. Reed, Deputy Prosecuting Attorney, Ada County Prosecutor's Office, Boise, Idaho; Matthew E. Fredback, Attorney, Blaine County Prosecutor's Office, Hailey, Idaho; for Defendants-Appellees.

# OPINION

M. SMITH, Circuit Judge:

Idaho's Children's School and Library Protection Act (H.B. 710) forbids schools and public libraries from making certain "harmful" content available to minors.  For the first time in the Idaho Code, H.B. 710 makes dissemination of obscene material to minor audiences civilly enforceable against these institutions.  Plaintiffs—an association of independent private schools and some of its members— brought suit pursuant to § 1983, challenging the statute's constitutionality under the First and Fourteenth Amendments.

Before our court, Plaintiffs appeal the district court's denial of their motion for a preliminary injunction on their First Amendment overbreadth theories. Plaintiffs attack several provisions of H.B. 710, maintaining that the statute exceeds the bounds of federal obscenity law pursuant to *Miller v. California*, 413 U.S. 15 (1973).  The Idaho state Defendants counter with limiting constructions that purport to conform H.B. 710 to *Miller*'s requirements.  For the reasons that follow, we conclude that Plaintiffs have shown a likelihood of success on the merits of their overbreadth theory related to H.B. 710's "context clause."  We further conclude that the remaining preliminary injunction factors favor Plaintiffs.  We therefore reverse the district court's denial of Plaintiffs' motion.  However, because our reversal is limited to the statute's context clause, we remand for the district court to consider in the first instance the appropriate scope of a narrow preliminary injunction in this case.

**FACTUAL AND PROCEDURAL BACKGROUND**

The Northwest Association of Independent Schools (Northwest) is a non-profit association of independent private schools. Northwest and two of its accredited members, Sun Valley Community School, Inc. and Foothills School of Arts and Sciences, Inc., are Plaintiffs-Appellants in this case (collectively, Plaintiffs or Private School Plaintiffs). They appeal the district court's denial of their motion for a preliminary injunction seeking to prevent the enforcement of Idaho House Bill 710.

We begin with the statutory scheme. As relevant to this appeal, H.B. 710 consists of three operative parts: the substantive prohibition enacted in April 2024 at Idaho Code § 18-1517B; the definitional provisions contained in Idaho Code § 18-1514 and incorporated by reference into § 18-1517B; and the enforcement provisions contained in § 18-1517B. Together, these provisions establish a multi-step regulatory framework for identifying content that is obscene for minor audiences and preventing schools and public libraries from disseminating it.

In 1972, the Idaho Legislature enacted Idaho Code § 18-1514, which defines, *inter alia*, the term "harmful for minors" for purposes of Idaho's obscenity laws. IDAHO CODE § 18-1514(6) (1972). Legislative history suggests that, following the Supreme Court's decision in *Miller v. California*, 413 U.S. 15, 24 (1973), the state legislature amended that definition in 1976 to better reflect the *Miller* test governing obscene material. The definition of "harmful to minors" was primarily implemented through § 18-1515, which had been enacted as part of the 1972 statute and created the misdemeanor offense of "disseminating material harmful to minors." IDAHO CODE § 18-1515.

In April 2024, the Idaho Legislature again amended § 18-1514's definition of "harmful to minors" and enacted H.B. 710, titled the Children's School and Library Protection Act. IDAHO CODE § 18-1517B. For the first time, H.B. 710 made disseminating "harmful" content, as defined in § 18-1514(6), to minors a civilly enforceable offense against schools and public libraries. IDAHO CODE § 18-1517B(2). The statute does so primarily through a private right of action allowing any minor, parent, or legal guardian to seek remedies against noncompliant schools and public libraries. IDAHO CODE § 18-1517B(3). A successful claimant may recover $250 in statutory damages, actual damages, and "any other relief available by law, including . . . injunctive relief sufficient to prevent the defendant school or public library from violating" the statute. *Id.* § 18-1517B(4). A separate provision allows the state government to seek injunctive relief against any school or public library that violates the statute. *Id.* § 18-1517B(5).

In July 2024, the Private School Plaintiffs, two privately funded public libraries (the Library Plaintiffs), and several parents (the Parent Plaintiffs), filed a lawsuit pursuant to 42 U.S.C. § 1983 against the Idaho Attorney General (Attorney General), the Ada County Prosecuting Attorney, and the Blaine County Prosecuting Attorney (collectively, Defendants). Plaintiffs asserted several constitutional claims under the First and Fourteenth Amendments. Because H.B. 710 had not yet been enforced against any of the Plaintiffs, all of the claims were brought as pre-enforcement challenges.

Plaintiffs collectively moved for a preliminary injunction, seeking to enjoin the enforcement of H.B. 710 statewide. Defendants moved to dismiss the complaint for lack of jurisdiction and standing, and the Attorney General

additionally moved to dismiss for failure to state a claim. The district court dismissed the Library Plaintiffs and Parent Plaintiffs for lack of standing, and it denied the Attorney General's motion to dismiss the Private School Plaintiffs' First and Fourteenth Amendment claims.

The district court went on to deny the Private School Plaintiffs' motion for a preliminary injunction. The court concluded that Plaintiffs failed to show a likelihood of success on the merits of their facial challenges to H.B. 710, and the rest of the preliminary injunction factors followed. The Private School Plaintiffs timely appealed, challenging the district court's decision with respect to their First Amendment overbreadth challenge.

## JURISDICTION AND STANDARD OF REVIEW

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343. We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1).

We review a district court's denial of a preliminary injunction for abuse of discretion. *Baird v. Bonta*, 81 F.4th 1036, 1040 (9th Cir. 2023). However, the district court's "interpretation of the underlying legal principles . . . is subject to de novo review[,] and a district court abuses its discretion when it makes an error of law." *Cal. Chamber of Com. v. Council for Educ. & Rsch. on Toxics*, 29 F.4th 468, 475 (9th Cir. 2022) (quoting *Sw. Voter Registration Educ. Project v. Shelley*, 344 F.3d 914, 918 (9th Cir. 2003) (en banc) (per curiam)). "A district court's decision is based on an erroneous legal standard if: (1) the court did not employ the appropriate legal standards that govern the issuance of a preliminary injunction; or (2) in applying the appropriate standards, the court misapprehended the law with respect to the underlying issues in the litigation." *Id.* (quoting *Negrete*

*v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1096 (9th Cir. 2008)).

## ANALYSIS

To obtain a preliminary injunction, Plaintiffs must show that (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). When the government is a party, the public interest and balance-of-equities factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Env't Prot. Info. Ctr. v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020).

We disagree with the district court that Plaintiffs do not show a likelihood of success on the merits on any of their First Amendment theories. Plaintiffs have shown that H.B. 710's context clause likely renders the statute constitutionally overbroad. The district court also erred in two other ways. First, it improperly ignored Plaintiffs' argument regarding the statute's outer limits through its definition of content that is "harmful to minors." Second, it erred by dismissing Plaintiffs' argument regarding the statute's definition of "sexual conduct" at the first step of the obscenity overbreadth inquiry. Though we disagree with the district court's reasoning with respect to these two challenges, the district court reached the right result. It did not do so with respect to the context clause, and we reverse on that basis. We do not reach the remainder of Plaintiffs' First Amendment challenges.

In *Moody v. NetChoice, LLC*, 603 U.S. 707 (2024), the Supreme Court clarified the standard for facial challenges under the First Amendment. Under that two-part test, courts must first examine the statute's scope and then weigh the constitutional applications of the statute against the unconstitutional applications. *See id.* at 724–25. The "overbreadth doctrine" is "an even looser standard" and "requires a plaintiff to establish only that a statute 'prohibits a substantial amount of protected speech,' 'relative to [its] plainly legitimate sweep.'" *Id.* at 754–55 (Thomas, J., concurring) (alteration in original) (quoting *United States v. Williams*, 553 U.S. 285, 292 (2008)). In *Powell's Books, Inc. v. Kroger*, 622 F.3d 1202, 1208 (9th Cir. 2010), we applied a "sequential analysis" to an overbreadth challenge on obscenity grounds. "First, we construe[d] the reach of the statutory provisions. Second, we inquire[d] whether the statute [regulates] a substantial amount of expressive activity. Finally, we consider[ed] whether the statute is readily susceptible to a limiting construction that would render it constitutional." *Id.* (citation modified).

On appeal, the parties debate the proper overbreadth standard. Defendants argue that to succeed on their overbreadth challenge, Plaintiffs must show both that H.B. 710 has so many unconstitutional applications that it is facially overbroad and that these applications are unambiguously required by the statute. Plaintiffs respond that Defendants' reliance on facial overbreadth cases in other contexts is misplaced. Rather, in the obscenity context, Plaintiffs contend that Defendants cannot prevail if H.B. 710 sweeps beyond *Miller* and its progeny.

We apply the "sequential analysis" from *Powell's Books*, 622 F.3d at 1208. The first two steps of that analysis—examining the statute's scope and assessing whether it

regulates a substantial amount of expressive activity—produce the same result as would be required under *Moody*'s two-part test.  *See Moody*, 603 U.S. at 724–25; *accord NetChoice, LLC v. Bonta* (*NetChoice AB 2273*), 113 F.4th 1101, 1115–16 (9th Cir. 2024).  And because our review of H.B. 710 is guided by the Idaho Supreme Court's approach to statutory interpretation, we further apply the third step from *Powell's Books* and ask whether H.B. 710 is "readily susceptible to a limiting construction that would render it constitutional."  622 F.3d at 1208 (citation modified); *see State v. Holden*, 890 P.2d 341, 347 n.4 (Idaho 1995) ("[W]henever possible, a statute should be construed so as to avoid a conflict with the state or federal constitution.").

## I.  Plaintiffs have shown a likelihood of success on the merits with respect to H.B. 710's "context clause."

To understand H.B. 710's permissible scope, we must first consider the First Amendment's boundaries on obscenity regulations.  In general, "obscene material is unprotected by the First Amendment," *Miller*, 413 U.S. at 23, and therefore may be subject to content-based regulation.  The Supreme Court has cabined "the permissible scope of such regulation to works which depict or describe sexual conduct" as "specifically defined by the applicable state law."  *Id.* at 24; *accord Video Software Dealers Ass'n v. Schwarzenegger*, 556 F.3d 950, 959–60 (9th Cir. 2009).  In *Miller*, the Supreme Court reviewed decades of obscenity jurisprudence and announced the test by which it would define obscene material:

> (a) whether the average person, applying contemporary community standards would find that the work, taken as a whole, appeals to the prurient interest[;]  (b) whether the

> work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work, taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Miller*, 413 U.S. at 24 (citation modified). "The coalescence of all three elements of the test is required to support a determination that a work is obscene." *United States v. Obscene Mags., Book and Advert. Materials*, 653 F.2d 381, 382 (9th Cir. 1981).

The *Miller* test unmistakably governs obscene content for adult audiences, and in *Free Speech Coalition, Inc. v. Paxton*, 606 U.S. 461 (2025), the Supreme Court explained its effect on obscenity as to minors. As a general matter, "minors are entitled to a significant measure of First Amendment protection, and only in relatively narrow and well-defined circumstances may government bar public dissemination of protected materials to them." *Erznoznik v. City of Jacksonville*, 422 U.S. 205, 212–13 (1975) (citation modified). But in *Ginsberg v. New York*, decided five years before *Miller* and under a prior obscenity standard, the Supreme Court held that a work that is non-obscene for adults may still be obscene for minors. *See* 390 U.S. 629, 636 (1968). In the years following *Miller*, the Court did not adopt an authoritative test governing obscenity for minor audiences or explain *Ginsberg*'s effect on the *Miller* standard. *See Erznoznik*, 422 U.S. at 213 n.10. So, over time, and in efforts to restrict minors' access to sexually explicit content, state legislatures enacted statutes that combined the definition of "harmful to minors" upheld in

*Ginsberg*[1] with *Miller*'s three-part test.  *See Fayetteville Pub. Libr. v. Crawford Cnty., Ark.*, 684 F. Supp. 3d 879, 899–902 (W.D. Ark. 2023) (collecting history).  Courts reviewing state obscenity statutes with restrictions on minors' access to sexually explicit content thus focused their analysis on which modifications to the *Miller* test, if any, were constitutionally permitted when minor audiences were involved.

The Supreme Court clarified the proper standard in *Free Speech Coalition*.  There, the Court determined that a Texas statute requiring commercial websites that publish sexually explicit content to conduct age verification did not burden the rights of adult visitors to those websites in violation of the First Amendment.  *Free Speech Coal.*, 606 U.S. at 465.  The majority recognized that "*Miller* does not define the totality of States' power to regulate sexually explicit speech," particularly because "States have a specific interest in protecting *children* from sexually explicit speech." *Id.* at 473.  And it further explained that "States can," therefore, "impose greater limits on children's access to sexually explicit speech than they can on adults' access." *Id.* (citation modified).  In so doing, a "State may broaden *Miller*'s 'definition of obscenity' to cover that which is obscene from

---

[1] The New York statute at issue in *Ginsberg* defined material that was "harmful to minors" as material that "predominantly appeal[ed] to the prurient, shameful or morbid interest of minors," was "patently offensive to prevailing standards in the adult community as a whole with respect to what is suitable material for minors," and was "utterly without redeeming social importance for minors." *Ginsberg*, 390 U.S. at 633.

a child's perspective." *Id.* at 474 (quoting *Ginsberg*, 390 U.S. at 638). Thus,

> a State may prevent minors from accessing works that (a) taken as a whole, and under contemporary community standards, appeal to the prurient interest *of minors*; (b) depict or describe specifically defined sexual conduct in a way that is patently offensive *for minors*; and (c) taken as a whole, lack serious literary, artistic, political, or scientific value *for minors*.

*Id.* Regulations tracking these modifications to the *Miller* test are subject to rational-basis review and will not trigger heightened scrutiny. *Id.*

With that background in mind, we turn back to the case before us. Because the Supreme Court's decision in *Free Speech Coalition* was published while this appeal was pending, the parties did not address its effect on their arguments. Neither did the district court have the benefit of the Supreme Court's guidance when ruling on Plaintiffs' motion for a preliminary injunction. Though we address it today, the standard announced in *Free Speech Coalition* does not affect our analysis.

We now take up the Idaho Code. In determining the scope of H.B. 710, we "interpret the law as would the Idaho Supreme Court." *Planned Parenthood of Idaho, Inc. v. Wasden*, 376 F.3d 908, 925 (9th Cir. 2004). The Idaho Supreme Court "begin[s] with the text of the statute." *Id.*; *see also State v. Yzaguirre*, 163 P.3d 1183, 1187 (Idaho 2007) ("Because the best guide to legislative intent is the words of the statute itself, the interpretation of a statute must

begin with the literal words of the statute." (citation modified)).    "When the language of the statute is unambiguous, the [Idaho Supreme] Court will give the language its plain meaning and refrain from applying statutory rules of construction." *Purco Fleet Servs., Inc. v. Idaho State Dep't of Fin.*, 90 P.3d 346, 349 (Idaho 2004). "In determining" the ordinary meaning of the text, "effect must be given to all the words of the statute if possible, so that none will be void, superfluous, or redundant." *Yzaguirre*, 163 P.3d at 1187.  Idaho courts find statutory language ambiguous if it is "capable of more than one reasonable construction." *Id.*  However, "ambiguity is not established merely because different possible interpretations are presented to a court. . . . [A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it." *State v. McKean*, 356 P.3d 368, 373 (Idaho 2015) (citation modified).

Against this backdrop, we turn to Plaintiffs' First Amendment challenges.

## A. Section 18-1514(6) is expansive on its face but is susceptible to a reasonable limiting construction.

Plaintiffs first challenge the definition of "harmful to minors," incorporated by reference into H.B. 710.**[2]**  Section 18-1514(6) provides that:

> "Harmful to minors" includes in its meaning
> the quality of any material or of any

---

[2] On appeal, Defendants emphasize that the constitutionality of § 18-1514(6) has never previously been challenged and that Idaho's definition of "harmful to minors" has applied to bookstores, private libraries, and any other entity or individual that could distribute such materials to minors since 1976.  That argument is irrelevant to Plaintiffs' current

performance or of any description or representation, in whatever form, of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse, when it: (a) Appeals to the prurient interest of minors as judged by the average person, applying contemporary community standards; and (b) Depicts or describes representations or descriptions of nudity, sexual conduct, sexual excitement, or sado-masochistic abuse which are patently offensive to prevailing standards in the adult community with respect to what is suitable material for minors and includes, but is not limited to, patently offensive representations or descriptions of:

(i) Intimate sexual acts, normal or perverted, actual or simulated; or

(ii) Masturbation, excretory functions or lewd exhibition of the genitals or genital area. Nothing herein contained is intended to include or proscribe any matter which, when considered as a whole, and in context in which it is used,

---

challenge and does not bear on our interpretation of H.B. 710. Indeed, these Plaintiffs likely would not have been able to challenge § 18-1514(6) before H.B. 710 because the 2024 statute makes § 18-1514(6) enforceable against schools *for the first time*, as Defendants themselves assert in their briefing on appeal. Moreover, as Plaintiffs point out and Defendants concede, § 18-1514 itself was made unconstitutional by *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491 (1985) and *Pope v. Illinois*, 481 U.S. 497 (1987)—yet it remained on the books unchanged until 2024.

> possesses serious literary, artistic, political or scientific value for minors.

IDAHO CODE § 18-1514(6).

Plaintiffs argue that the definition fails to identify "the outer limit of the state's authority." Specifically, Plaintiffs take issue with the definition's use of the term "includes" in two places: first, where the definition "includes in its meaning" all of the subsequent text, and second, where its proscription of "patently offensive" sexually explicit content "includes, but is not limited to" certain types of sexual acts and excretory functions. *Id.* Plaintiffs contend that "includes" is "intentionally expansive" and that the statute reaches beyond *Miller* because it "identifies only the beginning of the State's regulatory authority." Defendants respond that where "includes" is followed by a detailed definition, there is a strong implication that the meaning is restrictive and that the term's intent is to precisely define the scope of the statutory prohibition.

Defendants skip plain text in favor of implications and inferences. But on their face, both instances of "includes" are expansive—after all, that is the function of the word "include." *See Include*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/include (last accessed Nov. 28, 2025) ("to take in or comprise as a part of a whole or group"); *see also id.* ("to contain between or within"). By its plain meaning, "includes" gestures to the world of possibilities that exists beyond the specific text that follows it. *See Landis v. DeLaRosa*, 49 P.3d 410, 412 (Idaho 2002) ("Terms in a statute are given their common, everyday meanings when the legislature has not provided a definition in the statute."); *see also Powell's Books*, 622 F.3d at 1209 n.8 (explaining that "[b]ecause the statute does not define

'explicit' as it is used in section 057, we refer to its ordinary, dictionary meaning").

Sometimes "includes" "introduces examples," but it "does not ordinarily introduce an exhaustive list." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 132 (2012); *see also Fed. Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 100 (1941) ("[T]he term 'including' is not one of all-embracing definition, but connotes simply an illustrative application of the general principle."). "When a definitional section says that a word 'includes' certain things, that is usually taken to mean that it may include other things as well." SCALIA & GARNER, *supra*, at 226.

This plain reading of "includes" is also consistent with the Idaho Supreme Court's. Indeed, that court has repeatedly held that "[t]he word 'include' is not a limiting or restrictive term." *Cover v. Idaho Bd. of Corr.*, 476 P.3d 388, 398 (Idaho 2020) (quoting *Rohnert v. Amalgamated Sugar Co.*, 519 P.2d 432, 435 (Idaho 1974)); *see also State v. Burke*, 462 P.3d 599, 602 (Idaho 2020) (observing that the statutory text "including, but not limited to" is "expansive language"); *Heffner v. Ketchen*, 296 P. 768, 770 (Idaho 1931) ("The word 'including' is generally employed as a term of enlargement. It may be used as a word of addition indicating something not included rather than of specification." (citation modified)); *accord Landis*, 49 P.3d at 412.

Defendants nevertheless assert that "includes" is sometimes used to introduce a closed list or definition and that its application is context-dependent. They point to *Helvering v. Morgan's, Inc.*, 293 U.S. 121 (1934), where the Supreme Court acknowledged that "the term 'includes' may

sometimes be taken as synonymous with 'means,'" *id.* at 125.  But, relying on the structure and related sections of the Revenue Act, the Court went on to conclude that the term's meaning in its context must be "the equivalent of 'comprehends' or 'embraces.'"  *Id.*

As for H.B. 710, we need not look far for context clues either.  Of the eleven statutory definitions in § 18-1514, all but the definition of "harmful to minors" use the word "means," not the word "includes."  In *Helvering*, the Supreme Court similarly looked to the definitional sections of the Revenue Act and observed that while some definitions were "stated to 'include' designated particular instances," others were "stated to 'mean' the definitions subsequently given."  *Id.* at 125 n.1.  That was a notable "distinction": "where 'means' is employed, the term and its definition are to be interchangeable equivalents," whereas "the verb 'includes' imports a general class, some of whose particular instances are those specified in the definition."  *Id.*

Plaintiffs' argument on scope therefore finds support in the statute's text and structure.  And because "includes" is an expansive term that on its face does not limit H.B. 710's reach, the statute may well regulate "a substantial amount of expressive activity" at the second step of our overbreadth analysis.  *Powell's Books*, 622 F.3d at 1212.

But the third step of our overbreadth analysis requires us to ask whether H.B. 710 is subject to a reasonable limiting construction.  *See id.* at 1215; *accord State v. Gomez-Alas*, 477 P.3d 911, 920 (Idaho 2020).  We conclude that it is and accordingly read § 18-1514(6) to be limited to the categories of sexually explicit content outlined in § 18-1514(6)(a) and (b).

Our interpretation finds support in the text of § 18-1514 itself and elsewhere in H.B. 710. First, the enumerated terms in the definition's opening paragraph—nudity, sexual conduct, sexual excitement, and sado-masochistic abuse— are each defined elsewhere in the same section, and each definition purports to concern sexually explicit material. Next, as Defendants argue, the content prohibitable under the opening paragraph of § 18-1514(6) is then further limited by the subordinate clause beginning with "when it." For content to be "harmful to minors," the provision then requires that the content both "[a]ppeal[] to the prurient interest of minors" *and* "[d]epict[] or describe[] . . . nudity, sexual conduct, sexual excitement, or sado-masochistic abuse *which are patently offensive*[.]" IDAHO CODE § 18-1514(6)(a), (b) (emphasis added). The definition's requirements narrow the field of content to which it may apply at every step, and it is therefore reasonable to construe § 18-1514(6) as limited to the kinds of sexually explicit content enumerated in that provision. That is consistent with *Miller*.

As for the second instance of "includes" in § 18-1514(6)(b), Defendants concede that it "is indeed used to introduce a list, and the statute makes the list expressly non-exclusive by using the phrase 'not limited to.'" Nevertheless, this second instance of "includes" does not risk regulating a substantial amount of expressive activity under step two of our overbreadth analysis. That is because, as explained, content that is "harmful to minors" and therefore regulable by H.B. 710 must also meet several other requirements enumerated in § 18-1514(6) that would render the content obscene under *Miller*. It is therefore also reasonable to construe "includes" as used in § 18-1514(6)(b) to comport with *Miller* under step three. *See Powell's Books*,

622 F.3d at 1215.  Moreover, because Idaho courts construe statutes to avoid conflict with the federal Constitution wherever possible, *see Holden*, 890 P.2d at 347 n.4, we must do so where a reasonable limiting construction exists, as it does here.

**B. Section 18-1514(3) does not render H.B. 710 unconstitutional, but the district court's analysis was erroneous.**

We next turn to Plaintiffs' argument that H.B. 710 impermissibly proscribes non-obscene content because it sweeps up "innocuous, non-sexual, and non-erotic 'act[s] . . . of homosexuality.'"  Pursuant to *Miller* and its progeny, obscene content must "depict or describe sexual conduct," and qualifying conduct "must be specifically defined by the applicable state law." *Miller*, 413 U.S. at 24; *see also Erznoznik*, 422 U.S. at 213 n.10 ("[T]o be obscene such expression must be, in some significant way, erotic." (citation modified)); *Video Software Dealers Ass'n*, 556 F.3d at 959 ("The Supreme Court has carefully limited obscenity to sexual content.").  In several places, H.B. 710 prohibits and describes as "harmful to minors" depictions of "sexual conduct."  IDAHO CODE §§ 18-1517B, 18-1514(6). "Sexual conduct," in turn, is defined to "mean[] any act of masturbation, homosexuality, sexual intercourse, or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks or, if such a person be a female, the breast." *Id.* § 18-1514(3).

Plaintiffs argue that because that definition includes "sexual intercourse" and other forms of erotic "physical contact," the addition of "homosexuality" is superfluous unless it means something other than same-sex "sexual intercourse" or same-sex erotic "physical contact."

Defendants respond that, applying the canon of *noscitur a sociis*, "homosexuality" should be given a meaning similar to the rest of the items in the list, that is, limited to sexually explicit acts. Moreover, because the phrase "sexual conduct" does not ordinarily include innocuous activities like holding hands or coparenting, Defendants maintain, the statute clearly was not intended to prohibit that conduct.

Plaintiffs advance a colorable argument that § 18-1514(3)'s scope may exceed *Miller*'s bounds. Though the district court "recognize[d] Plaintiffs' genuine concerns regarding the statute's archaic language and how it may isolate a particular class," it disposed of this argument "under the applicable cannons of statutory interpretation." But the Idaho Supreme Court "do[es] not employ canons of construction unless [it] finds the statutory language is ambiguous." *Wall & Assocs., Inc. v. Dep't of Fin.*, 574 P.3d 807, 816 (Idaho 2025). The district court here made no finding as to the phrase's ambiguity. It therefore erred by sidestepping the statute's plain text, and we correct that error here.

"Statutory interpretation begins with the literal words of the statute" in the Idaho courts, and statutory "language should be given its plain, obvious, and rational meaning." *McKean*, 356 P.3d at 372 (citation modified). The statute does not define "homosexuality," so we look to the term's plain meaning. "Homosexuality" generally refers to "sexual or romantic attraction to others of one's same sex" or "the quality or state of being gay." *Homosexuality*, MERRIAM-WEBSTER, https://www.merriam-webster.com/dictionary/homosexuality (last visited Jan. 16, 2026); *see also Homosexuality*, OXFORD ENGLISH DICTIONARY,

https://www.oed.com/dictionary/homosexuality_n?tab=me
aning_and_use#1217874580 (last visited Jan. 16, 2026)
(similar).    On its face, the phrase "any act of . . .
homosexuality" could therefore reach a spacious field of
conduct, so long as that conduct relates to the quality of
sexual or romantic attraction to someone of the same sex.
That may well sweep up depictions of conduct like holding
hands or kissing by individuals of the same sex.

Moreover, when construing statutory text, the Idaho
Supreme Court "must give effect to all the words and
provisions of the statute so that none will be void,
superfluous, or redundant."    *E. Side Highway Dist. v.
Kootenai Cnty.*, 572 P.3d 153, 158 (Idaho 2025) (quoting
*TCR, LLC v. Teton Cnty.*, 559 P.3d 302, 319 (Idaho 2024)).
Though, as Plaintiffs acknowledge, statutory terms may
have overlapping meanings, "any act of . . . homosexuality"
is devoid of meaning entirely in § 18-1514(3) if it refers to
nothing more than sexual intercourse or erotic physical
contact, just between individuals of the same sex.    "[A]ny
act of . . . sexual intercourse, or physical contact with a
person's clothed or unclothed genitals, pubic area, buttocks
or . . . the [female] breast" that takes place between
individuals of the same sex is already fully accounted for by
the definition.    IDAHO CODE § 18-1514(3).

Defendants argue that "act of . . . homosexuality" is
ambiguous and urge us to resolve the ambiguity by applying
*noscitur a sociis*—the principle that "a word is known by the
company it keeps."    *Yates v. United States*, 574 U.S. 528,
543 (2015).    We disagree.    Applying *noscitur a sociis* does
not necessarily rescue § 18-1514(3) because the canon does
not require "constru[ing] [a] general term so strictly that it
eliminates its plain meaning."    *Wall & Assocs.*, 574 P.3d at
816.    "[E]ven if a general term is interpreted to be similar to

the more specific words, . . . the general term remains broader than the specific ones." *Id.*  As written, "any act of . . . homosexuality" is a broader term compared with the other items in the list, which identify specific, sexually explicit acts.  It is true that "any act of . . . homosexuality" may include within it sexual conduct of the type enumerated in the remainder of § 18-1514(3), and in that way, it is similar to those other terms.  But its plain meaning makes clear that this term, unlike the others, is capable of reaching farther.

Defendants' telling of the legislative history does not persuade.  First, Defendants' assertion that "homosexuality" was included because "in 1976, it would not have been unambiguously clear to an Idaho reader that 'sexual intercourse' included activity between two people of the same sex" is unconvincing.  As Plaintiffs highlight, several other Idaho statutes—including provisions within the same title of the Idaho Code—have over time defined the term "sexual intercourse" to refer to "persons of the same or opposite sex." *See, e.g.*, 1983 Idaho Sess. Laws ch. 256, § 1 (codified at IDAHO CODE § 18-1507(k)) (defining "sexual intercourse" to "mean[] real or simulated intercourse, . . . between persons of the same or opposite sex, or between a human and an animal, or with an artificial genital"); 1993 Idaho Sess. Laws ch. 222, § 1 (codified at IDAHO CODE § 18-6110(3)) (defining "sexual contact" to "mean[] sexual intercourse, genital-genital contact, manual-anal contact, manual-genital contact, oral-genital contact, anal-genital contact or oral-anal contact, between persons of the same or opposite sex"); 2008 Idaho Sess. Laws ch. 240, § 1 (codified at IDAHO CODE § 18-1506(4)) (defining "sexual conduct" to mean, *inter alia*, "sexual intercourse . . . whether alone or between members of the same or opposite sex"); 2022 Idaho

Sess. Laws ch. 124 § 5 (codified at IDAHO CODE § 18-6601(2)) (defining "sexual intercourse" to "mean[] genital-genital, oral-genital, anal-genital, oral-anal, manual-anal, or manual-genital penetration between persons of the same or opposite sex").**[3]**

Putting aside what might be clear to an Idaho reader, taking these provisions together with § 18-1514(3) suggests that it was clear to the Idaho legislature that the statutory term "sexual intercourse" refers to the conduct in question, not the participants. *Cf. State v. Leary*, 372 P.3d 404, 407 (Idaho 2016) (Idaho courts must "consider[] the statute as a whole, and give[] words their plain, usual, and ordinary meanings." (citation modified)). By contrast, the phrase "any act of . . . homosexuality" spotlights the participants, especially when located within a list of otherwise specific, sexually explicit acts. Further, even if the legislature "did not have" innocuous conduct between individuals of the same sex "in mind when it passed this act," our "construction of the law must be based upon the language used and not upon surmise." *State v. Armstrong*, 225 P. 491, 493 (Idaho 1923). "[A]s often happens, the Legislature used general language without anticipating all the results which might follow. When the language used in a statute has a definite, clear meaning, . . . the courts must give effect to that

---

[3] Moreover, while H.B. 710 included amendments to the definition of "harmful to minors" in § 18-1514(6), the definition of "sexual conduct" was untouched. *See* H.B. 710, 67th Leg., 2d Reg. Sess. (Idaho 2024), https://legislature.idaho.gov/wp-content/uploads/sessioninfo/2024/legislation/H0710.pdf (last visited Jan. 16, 2026); *cf. Arellano v. Sunrise Homes*, 569 P.3d 129, 136–37 (Idaho 2025) ("When a statute is amended, . . . it is presumed that the legislature intended the statute to have a meaning different from the meaning accorded the statute before amendment.").

meaning whether or not the individuals comprising the Legislature anticipated the result." *Id.* At the threshold step of our overbreadth analysis, Plaintiffs have persuasively argued that § 18-1514(3) may sweep up non-sexual, non-erotic content—which *Miller* forbids.

Having examined the statute's scope, we next consider whether H.B. 710 regulates a substantial amount of expressive activity. *See Powell's Books*, 622 F.3d at 1212. Were § 18-1514(3) a self-contained provision, Plaintiffs may have succeeded at this step of our analysis, too. Critically, however, § 18-1513(3) does not stand alone but is nested within the broader framework of H.B. 710. Examining that framework as a whole, we conclude that the multi-step analysis required by H.B. 710 minimizes the risk that non-sexual or non-erotic content would ultimately fall within the statute's regulatory ambit.

The term "sexual conduct" appears multiple times in H.B. 710, both in the statute's substantive prohibition and definitional sections. For a valid cause of action, a work that allegedly violates the statute for its depiction of "sexual conduct" must therefore: (1) depict "sexual conduct" pursuant to § 18-1517B(2)(a), (b), or (c);[4] (2) depict "sexual

---

[4] Section 18-1517B(2) provides in full:

> (2) Notwithstanding any other provision of law, a school or public library, or an agent thereof, shall not promote, give, or make available to a minor:

> (a) Any picture, photograph, drawing, sculpture, motion picture film, or similar visual representation or image of a person or portion of the human body that depicts nudity, *sexual conduct*, or sado-masochistic abuse and that is harmful to minors;

conduct" pursuant to the description in the opening paragraph of § 18-1514(6); [5] (3) *also* "[a]ppeal[] to the prurient interest of minors" under § 18-1514(6)(a); *and* (4) depict or describe either "[i]ntimate sexual acts" or "[m]asturbation, excretory functions or lewd exhibition of the genitals or genital area" under § 18-1514(6)(b)(i)–(ii). Innocuous, non-sexual conduct is unlikely to slip through this analytical thicket and form the basis for a valid cause of action. Plaintiffs do not put forth a contrary analysis of the statute's step-by-step application.

For similar reasons, we conclude that "any act of . . . homosexuality," § 18-1514(3), is also "susceptible to a reasonable limiting construction," *Powell's Books*, 622 F.3d at 1215. Though we may "consider the limiting constructions proffered by the state," we "do not 'insert missing terms into the statute or adopt an interpretation precluded by the plain language of the ordinance.'" *Id.* (quoting *Foti v. City of Menlo Park*, 146 F.3d 629, 639 (9th Cir. 1998)). Similarly, we will not "rewrite a state law to

---

(b) Any book, pamphlet, magazine, printed matter however reproduced, or sound recording that contains any matter pursuant to paragraph (a) of this subsection or explicit and detailed verbal descriptions or narrative accounts of sexual excitement, *sexual conduct*, or sado-masochistic abuse and that, taken as a whole, is harmful to minors; or

(c) Any other material harmful to minors.

IDAHO CODE § 18-1517B(2) (emphases added).

[5] The opening paragraph provides that content that is "harmful to minors" is "the quality of any material or of any performance or of any description or representation, in whatever form, of nudity, *sexual conduct*, sexual excitement, or sado-masochistic abuse[.]" IDAHO CODE § 18-1514(6) (emphasis added).

conform it to constitutional requirements." *Id.* (quoting *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 397 (1988)). But reading H.B. 710 in its entirety, as Idaho courts must, *see Leary*, 372 P.3d at 407, the statute imposes a multi-step analysis onto allegedly violative content that is unlikely to result in the regulation of depictions of innocuous conduct. We therefore adopt the reasonable construction that the phrase "any act of . . . homosexuality" in § 18-1514(3) reaches only "sexual intercourse[] or physical contact with a person's clothed or unclothed genitals, pubic area, buttocks, or if such person be a female, the breast" between individuals of the same sex—as would be the case for depictions of individuals of the opposite sex under the statute.[6] Idaho Code § 18-1514(3).

## C. Plaintiffs have made a sufficient showing that H.B. 710's context clause is likely overbroad.

Next, Plaintiffs argue that H.B. 710 omits *Miller*'s serious value requirement.[7] Under *Miller*, material that

---

[6] Defendants assert that the 1976 statute, which relied on the same definition of "sexual conduct" in § 18-1514(3), has never been enforced under the "expansive theories" Plaintiffs advance, including "the statute's mention of 'homosexuality' as a form of 'sexual conduct[.]'" That may be, but we "may not uphold the statute[] merely because the state promises to treat [it] as properly limited." *Powell's Books*, 622 F.3d at 1215; *see also United States v. City of Arcata*, 629 F.3d 986, 992 (9th Cir. 2010) ("[T]he cities' promise of self-restraint does not affect our consideration of the ordinances' validity."). And the district court here found that "Defendants do not disavow an intention to enforce H.B. 710."

[7] As explained above, the Supreme Court has now been clear that states may extend *Miller*'s serious value prong to obscenity for minors. Assuming the prurient interest and patently offensive prongs have been satisfied as to minors, states may "prevent minors from accessing works that . . . lack serious literary, artistic, political, or scientific value *for*

might otherwise be obscene retains First Amendment protection when the work, "taken as a whole, [possesses] serious literary, artistic, political, or scientific value." 413 U.S. at 24. *Free Speech Coalition* permits states to modify that requirement to cover works that possess serious value "for minors." *Free Speech Coal.*, 606 U.S. at 474. H.B. 710 includes a clause that purports to reflect that requirement:

> Nothing herein contained is intended to include or proscribe any matter which, when considered as a whole, and in context in which it is used, possesses serious literary, artistic, political or scientific value for minors.

IDAHO CODE § 18-1514(6)(b)(ii). We agree with Plaintiffs that this provision is constitutionally deficient because of what Plaintiffs term the "context clause." *Free Speech Coalition* does not disturb that conclusion, which forms the basis of our reversal of the district court's order.[8]

---

*minors*." *Free Speech Coal.*, 606 U.S. at 474. Even absent the Supreme Court's clarification in *Free Speech Coalition*, the parties to this appeal do not contest that *Miller*'s serious value requirement may extend to minors.

[8] As a threshold matter, Plaintiffs contend that because this clause forms the second sentence of § 18-1514(6)(b)(ii), it applies only to the prior sentence, which addresses "representations or descriptions" of "[m]asturbation, excretory functions, or lewd exhibitions of the genitals or genital area." *Id.* We agree with the district court that the serious value clause likely applies to H.B. 710 in its entirety. First, a natural reading of the phrase "[n]othing herein contained" suggests that it applies to the entire text. The contrary interpretation that the clause only applies to subsection (6)(b)(ii) begs absurdity. Moreover, the serious value clause relies on a structure identical to § 18-4101, which defines

The context clause requires courts and other reviewers of allegedly offending content to consider whether the work "possesses serious literary, artistic, political or scientific value for minors" "in context in which it is used."  IDAHO CODE § 18-1514(6)(b)(ii).   Though the clause broadly requires considering a disputed work "in context," the parties to this appeal dispute whether the provision permits evaluating a work's obscenity with respect to minors of different ages.[9]  Thus, for the purpose of our overbreadth analysis, we assume that this age-based construction is the intended scope of the context clause.[10]

Plaintiffs argue that the context clause contravenes *Miller* and *Pope v. Illinois*, 481 U.S. 497 (1987), which

---

obscenity for adult audiences and includes a comparable clause in its definition.   *See* IDAHO CODE § 18-4101(A)(2)(b),  18-4101(I)(2). Though the serious value clause in § 18-4101 contains a line break while the clause in § 18-1514(6)(b)(ii) does not, the district court did not err in concluding that this "difference is, at worst, a 'scrivener's error'"—albeit an unfortunate one.

[9] During oral argument, counsel for Defendants appeared to recant, at least in part, the age-based construction of the context clause that Defendants pressed in their briefing on appeal.  Counsel did not offer an explanation for this pivot nor otherwise state that Defendants have explicitly changed their position.   Accordingly, we evaluate the argument as put forth in Defendants' briefing.

[10] We note, however, that the plain text of the context clause is exceptionally broad: it requires the reviewer of the content to consider the work "in context in which it is used," which would require educators and librarians to "perform statutory interpretation on the fly, . . . while [] the specter of harsh penalties looms in the background." *Penguin Random House LLC v. Gibson*, 796 F. Supp. 3d 1052, 1079 (M.D. Fla. 2025).  However, because Plaintiffs do not challenge the breadth of this language beyond Defendants' age-based approach, and because we find the narrower, age-based approach deficient, we do not further address the clause's plain text.

together establish that a work's serious value must be assessed against an objective, national standard.  Defendants argue that Plaintiffs conflate two separate questions: first, whether serious value may be judged by community standards as prurient interest can be; as Defendants acknowledge, under *Pope*, it cannot.  *See* 481 U.S. at 500–01.  The second question, however, is whether, in reviewing the work for serious value according to a national standard, the reviewer may take into account whether the work has serious value for minors of a particular age.  Defendants argue the reviewer can, and urge us to adopt a "variable obscenity" standard that determines a work's obscene quality in context of its "time, place, and circumstance" by looking to "the circumstances of its dissemination" and "focusing attention on particular types of audiences."

The Supreme Court explained in *Erznoznik* that "[t]he First Amendment rights of minors are not 'co-extensive with those of adults.'"  422 U.S. at 213 n.11 (quoting *Tinker v. Des Moines Sch. Dist.*, 393 U.S. 503, 515 (1969) (Stewart, J., concurring)).  That is because "a child—like someone in a captive audience—is not possessed of that full capacity for individual choice which is the presupposition of First Amendment guarantees."  *Id.* (quoting *Ginsberg*, 390 U.S. at 649–50 (Stewart, J., concurring)).  The Court further observed that "[i]n assessing whether a minor has the requisite capacity for individual choice the age of the minor is a significant factor."  *Id.*  But in the same case, the Court stated unequivocally that "[c]learly all nudity cannot be deemed obscene even as to minors," without distinction for different age groups.  *Id.* at 213; *see also id.* n.10 ("It is clear . . . that under any test of obscenity as to minors not all nudity would be proscribed.").  The Supreme Court thereby acknowledged that there may be some content depicting, for

example, nudity, that would not be obscene as to minors as a class.

The context clause, construed as Defendants propose, allows claimants—including the State—to flout that principle for works they find subjectively offensive.  It invites the reviewer's subjective assessment of the time, place, and circumstance in which the work "is used" in determining whether the work has serious value for minors of particular ages.  IDAHO CODE § 18-1514(6)(b)(ii).  Indeed, that is the precise analysis Defendants advocate, and it necessarily implicates individual claimants' and the State's beliefs on the appropriateness of the content.  *Miller* and *Pope* do not permit such review—and neither, in our view, does *Free Speech Coalition*.  Plaintiffs here do not challenge that § 18-1514(6)(b)(ii) expressly requires reviewers to consider a work's serious value "for minors," and pursuant to *Free Speech Coalition*, Plaintiffs can no longer do so.  But *Free Speech Coalition* says nothing about a context clause like the one at issue, so its import for our case ends there.

The remainder of the statute does nothing to temper the subjectivity encouraged by the context clause.  On the contrary, the statute's primary enforcement mechanism, a private right of action, doubles down on the risks the context clause poses.  *See* IDAHO CODE § 18-1517B(3).  H.B. 710 grants "[a]ny minor who obtains material, or parent or legal guardian whose child obtained material" in violation of the statute's substantive provisions a cause of action against schools and public libraries that so much as "made available" material that is "harmful to minors," if the institution fails to relocate "such material to a section designated for adults only."  *Id.* § 18-1517B(3), (3)(a), (3)(b).  But the statute does not purport to establish an objective standard by which "context" can be measured.

Instead, H.B. 710 effectively allows individual claimants—or the State—to decide. *See, e.g.*, *Penguin Random House*, 796 F. Supp. 3d at 1079 (in reviewing a similar obscenity statute, observing that "Florida has given parents license to object to materials under an 'I know it when I see it' approach" (citation omitted)); *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 71 (1963) ("The distributor is left to speculate whether the [Rhode Island Commission to Encourage Morality in Youth] considers [a] publication obscene or simply harmful to juvenile morality."). We therefore conclude that the context clause exceeds constitutional scope.

If read into H.B. 710, Defendants' variable obscenity standard "reaches a substantial amount of expressive activity." *Powell's Books*, 622 F.3d at 1214. The context clause likely burdens Plaintiffs' right to provide non-obscene material to older minors who wish to access material that, pursuant to H.B. 710, the school or library has relegated to "a section dedicated for adults only." IDAHO CODE § 18-1517B(3)(b). [11] Indeed, the statute does not contemplate the treatment of content that, applying Defendants' age-based construction of the context clause, might be obscene for younger minors but not their older

---

[11] An older minor might be able to access material in a restricted section if accompanied by their parent or legal guardian, if the accompanying adult signs a written statement to that effect. *See* IDAHO CODE § 18-1517B(6)(b). Absent an accompanying adult, however, the older minor remains unable to access content that might not be obscene as to them but could be as to younger minors. One federal court has suggested that "[r]equiring those under the age of [eighteen] to enter the library with an adult is . . . a nonstarter" because "[t]hat, in . . . itself, will burden older minors' First Amendment rights." *Fayetteville Pub. Libr.*, 684 F. Supp. 3d at 904 n.26.

counterparts. Rather, the statute itself draws a single distinction between adults and minors as a class. *See, e.g.*, IDAHO CODE § 18-1514(1) (defining "Minor" to "mean[] any person less than eighteen (18) years of age"); *id.* § 18-1517B(6)(a) (affirmative defense exists where defendant had "reasonable cause to believe" minor was eighteen years of age or older). That distinction makes sense because, as the Supreme Court has recognized, "[t]he age of [eighteen] is the point where society draws the line for many purposes between childhood and adulthood." *Roper v. Simmons*, 543 U.S. 551, 574 (2005). *Ginsberg*'s "adaptation of the adult obscenity test" certainly allows states like Idaho to draw that line. *Am. Booksellers v. Webb*, 919 F.2d 1493, 1504 (11th Cir. 1990). But Idaho may not make further distinctions between minors based on their ages where doing so impermissibly burdens Plaintiffs' constitutional rights.

In its current state, H.B. 710 does exactly that. Put simply, the statute does not offer a workable implementation for Defendants' proposed age-based reading of the context clause. If a school, like one of Plaintiffs, abides by a claimant's wishes and relocates a book, it risks its own First Amendment right to disseminate non-obscene content to minors of all ages. If it declines to do so, it risks legal action—even if the rejection follows the school's own thorough, good faith evaluation of the work's serious value under H.B. 710.**[12]** At the very least, the "threat of invoking

---

[12] *Cf.* IDAHO CODE § 18-1517B(6) (affirmative defenses to civil liability exist only where defendant shows "that the defendant (a) Had reasonable cause to believe that the minor involved was eighteen (18) years of age or older or such minor exhibited to the defendant" purportedly "official document[ation]" establishing their age; or "(b) Verified the minor involved was accompanied, at the time of the act, by his parent or legal guardian, or by another adult and the adult represented that he was the

legal sanctions" against institutions like Plaintiffs creates a "system of informal censorship," *Bantam Books*, 372 U.S. at 67, 71; at most, the statute encourages formal censorship through the legal process.  The First Amendment does not tolerate either outcome.  *See id.*; *see also Erznoznik*, 422 U.S. at 217–18.

In sum, H.B. 710 fails to set guardrails on the context clause contained in § 18-1514(6)(b)(ii).  *See supra* note 10; *see also Bantam Books*, 372 U.S. at 65 (recognizing the "vital necessity . . . of safeguards" in the application of obscenity regulations "to prevent denial of the protection of freedom of speech" (citation modified)).    We therefore conclude that H.B. 710 is not "readily susceptible" to an interpretation that permits the execution of Defendants' variable obscenity standard.  *See Am. Booksellers*, 919 F.2d at 1508.  We hold that, against the background of H.B. 710's analytical framework and enforcement regime, the context clause is likely overbroad.  At this stage, that is sufficient for Plaintiffs to have demonstrated a likelihood of success on the merits.  Defendants' proposed narrowing construction of the context clause is belied by the requirements H.B. 710 places on schools and libraries to physically remove offending content to restricted "adult" areas and by the statute's enforcement mechanisms.  *See* IDAHO CODE § 18-1517B. We further conclude that because the context clause is likely constitutionally deficient, the district court erred by construing H.B. 710's serious value provision as a "savings clause" and therefore a "backstop against concluding that the law has an unconstitutional scope."  As is self-evident, a deficient clause cannot save a deficient statute.

---

minor's parent or legal guardian and signed a written statement to that effect").

## II. The remaining preliminary injunction factors favor Plaintiffs.

Because we conclude that Plaintiffs have shown a likelihood of success on the merits, we turn to the remaining preliminary injunction factors. To secure reversal of the district court's order, Plaintiffs must have demonstrated irreparable harm; a balance of the equities weighing in their favor; and that the preliminary relief is in the public interest. *Winter*, 555 U.S. at 20.

### A. Plaintiffs have demonstrated irreparable harm.

A plaintiff must allege more than a possibility of irreparable harm. *Id.* But we have said that "[i]rreparable harm is relatively easy to establish in a First Amendment case." *Cal. Chamber of Com.*, 29 F.4th at 482 (citation omitted). Plaintiffs "need only demonstrate the existence of a colorable First Amendment claim." *Id.* (citation modified). Because Plaintiffs have presented a colorable First Amendment claim with respect to H.B. 710's context clause, the district court erred in finding that Plaintiffs failed to show irreparable harm.

### B. Public interest and balance of hardships also favor Plaintiffs.

Our court has "repeatedly held that when plaintiffs show they are likely to succeed on a First Amendment claim, that compels a finding that the equities and public interest favor an injunction." *NetChoice, LLC v. Bonta* (*NetChoice SB 976*), 152 F.4th 1002, 1025 (9th Cir. 2025) (citation modified). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *X Corp. v. Bonta*, 116 F.4th 888, 904 (9th Cir. 2024) (quoting *Fellowship of Christian Athletes v. San Jose Unified Sch.*

*Dist. Bd. of Educ.*, 82 F.4th 664, 695 (9th Cir. 2023)). Moreover, "when a party raises serious First Amendment questions, that alone compels a finding that the balance of hardships tips sharply in its favor." *Id.* (citation modified). "The government reasonably has an interest in" regulating minors' access to obscene material. *Id.* "But even undeniably admirable goals must yield when they collide with the Constitution." *Id.* (citation modified); *accord Fellowship of Christian Athletes*, 82 F.4th at 695; *NetChoice SB 976*, 152 F.4th at 1025. Our precedent thus counsels the conclusion that the balance of hardships and public interest factors weigh in Plaintiffs' favor.

Accordingly, we hold that the district court abused its discretion by denying Plaintiffs' motion for a preliminary injunction in its entirety.

## III.   The appropriate course is to remand.

We turn finally to the scope of our reversal and the preliminary injunction in question. In general, "a federal court should not extend its invalidation of a statute further than necessary to dispose of the case before it." *Brockett v. Spokane Arcades, Inc.*, 472 U.S. 491, 502 (1985). Thus, partial, rather than full, invalidation is sometimes the proper remedy for statutory overbreadth. *See Polykoff v. Collins*, 816 F.2d 1326, 1335–36 (9th Cir. 1987). Our overbreadth conclusion here is limited to the narrow ground of H.B. 710's context clause. Enjoining H.B. 710 in its entirety accordingly may not be the appropriate course.

Because the district court denied Plaintiffs' motion, it had no occasion to consider the appropriate scope of a preliminary injunction in this case. It should have the opportunity to do so. The parties also have not briefed this issue before our court.

We therefore remand to the district court for consideration in the first instance of the appropriate, narrow scope of a preliminary injunction. *See, e.g.*, *Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 422 F.3d 782, 800 (9th Cir. 2005); *cf. NetChoice AB 2273*, 113 F.4th at 1108.

## CONCLUSION

For the foregoing reasons, the district court abused its discretion by denying Plaintiffs' motion for a preliminary injunction in its entirety. Plaintiffs have shown a likelihood of success on the merits because H.B. 710's context clause is overbroad on its face, threatens to regulate a substantial amount of expressive activity, and is not readily susceptible to a limiting construction. Our First Amendment jurisprudence counsels that the remaining preliminary injunction factors follow suit, and the district court erred in concluding otherwise. We therefore reverse. On remand, the district court will have the opportunity to consider the scope of a limited preliminary injunction in this case and to conduct further proceedings consistent with our opinion.

**REVERSED AND REMANDED.**